Filed 5/30/13

# IN THE SUPREME COURT OF CALIFORNIA

COUNTY OF LOS ANGELES, )
)
      Plaintiff and Appellant, )
)
      v. )        S191944
)
LOS ANGELES COUNTY EMPLOYEE )      Ct.App. 2/3 B217668
RELATIONS COMMISSION, )
)      Los Angeles County
      Defendant and Respondent; )    Super. Ct. No. BS116993
)
SERVICE EMPLOYEES )
INTERNATIONAL UNION, LOCAL 721, )
)
      Real Party in Interest and )
      Respondent. )
_____ )

      This case involves the balance between an employee's right of informational privacy[1] and a union's right to obtain information it needs to represent the employee in collective bargaining. The Service Employees International Union, Local 721 (SEIU) is the exclusive bargaining representative of all Los Angeles County (County) employees. The question here is whether SEIU is entitled to obtain the home addresses and phone numbers of all represented employees, including those who have not joined the union. We agree with both courts below that it is so entitled but reverse the Court of Appeal's imposition of procedural requirements limiting disclosure.

---

[1]    See *Pioneer Electronics (USA) Inc. v. Superior Court* (2007) 40 Cal.4th 360, 372-373 (*Pioneer Electronics*).

1

State and federal labor decisions have long held that unions are presumptively entitled to contact information for all employees they represent. These decisions, and applicable labor laws, generally obligate the County to give SEIU the requested information. Whether the right to privacy under article I, section 1 of the California Constitution prohibits disclosure is a question of first impression. We conclude that, although the County's employees have a cognizable privacy interest in their home addresses and telephone numbers, the balance of interests strongly favors disclosure of this information to the union that represents them. Procedures may be developed for employees who object to this disclosure. However, the Court of Appeal exceeded its authority in this administrative mandate proceeding by attempting to impose specific procedures on the parties.

## I. BACKGROUND

SEIU is the certified majority representative for County employees in several bargaining units. County employees have a collective right to unionize but an individual right to refuse to join or participate in a union. (Gov. Code, § 3502;[2] L.A. County Code, § 5.04.070.) To accommodate these rights, a public agency may enter into an "agency shop agreement" with the organization recognized as the employees' exclusive or majority bargaining agent. (§ 3502.5, subd. (a).) An "agency shop" is "an arrangement that requires an employee, as a condition of continued employment, either to join the recognized employee organization or to pay the organization a service fee . . . ." (*Ibid*.)

Each of the County's bargaining units has a memorandum of understanding (MOU), with SEIU. Most of these MOUs have an agency shop provision that gives County employees four options: (1) join SEIU and pay dues; (2) decline to join and pay a fair share fee; (3) decline to join, object to the fair share fee, and

---

[2] All statutory references are to the Government Code unless otherwise specified.

2

instead pay an agency shop fee; or (4) decline to join, claim a religious exemption, and pay the agency shop fee to a nonreligious, nonlabor charitable fund. A recognized bargaining agent acts on behalf of *all* employees in a bargaining unit, whether the employees are union members or not.

*Teachers v. Hudson* (1986) 475 U.S. 292 (*Hudson*) requires that SEIU send County employees an annual notice to collect fees from nonmembers. The *Hudson* notice sets out membership options, applicable fees, and the reasons for these fees.[3] SEIU's notice packet also includes forms allowing the employee to join or decline to join the union. Those who decline are asked to provide their name, home address, and home telephone number. Employees who do not return any form are, by default, considered "fair share fee payers." As of 2007, nearly 12,000 of the County's approximately 14,500 nonmember employees were fair share fee payers. SEIU has home addresses for about half of these nonmembers.[4]

Historically, the County provided lists of nonmembers' names, worksites, office addresses, and supervisors, but has never given SEIU home addresses or telephone numbers. Consequently, SEIU has not sent *Hudson* notices directly to County employees. Instead, since at least 1994, SEIU has delivered *Hudson* notice packets to the Los Angeles County Employee Relations Commission (ERCOM), an independent body that manages relations between the County and

---

[3]      In *Hudson*, the United States Supreme Court held that the First Amendment rights of nonunion employees require that, before an agency fee is collected, employees must receive "an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending." (*Hudson*, *supra*, 475 U.S. at p. 310; see also *Knox v. Service Employees Internat. Union, Local 1000* (2012) 567 U.S. __ [132 S.Ct. 2277, 2292-2293] [*Hudson* notice must also be provided when public-sector union imposes a special assessment or dues increase].)

[4]      SEIU also has contact information for approximately 46,000 County employees who are members.

its employees under the Meyers-Milias-Brown Act (MMBA). (§§ 3507, 3509.)[5] ERCOM would then mail the *Hudson* notices, using address labels provided by the County.

During negotiations in 2006, SEIU proposed amending the MOU as follows: "To facilitate the carrying out of this responsibility [to provide *Hudson* notices], each year the County shall furnish the Union with the names and home addresses of employees in [the] bargaining units covered by agency shop provisions." SEIU also sought contact information for other reasons. As the exclusive bargaining representative, SEIU wanted to communicate with all County employees, members or otherwise, about union activities and events.[6] It also wanted the information for recruitment[7] and investigation of grievances.

The County rejected the amendment, contending contact information was not relevant to any collective bargaining issue and disclosure would violate nonmembers' privacy rights. The County proposed either to continue the current arrangement or to negotiate a procedure for employees to release their own data. SEIU opposed these alternatives, withdrew its proposal to modify the *Hudson* notice provision, and filed a charge with ERCOM alleging an unfair employee relations practice.

After a three-day hearing, an administrative hearing officer concluded the County's refusal to provide the contact information was an unfair labor practice. Relying on decisions by the Public Employment Relations Board (PERB) and the National Labor Relations Board (NLRB), the hearing officer held the contact information was presumptively relevant (see *post*, at p. 9) to SEIU's

---

[5]     ERCOM performs the same function for Los Angeles County as the Public Employment Relations Board performs for other public employers in California. (See *post*, at p. 8.)

[6]     Some communication with nonmembers is possible through bulletin boards at County worksites.

[7]     A union representative testified: "If we had the chance to talk to [the non-members], we could have them as members."

4

representation. While acknowledging that privacy interests were at stake, the hearing officer found the County had not met its burden to show that the nonmembers' privacy interest outweighed SEIU's need for the information. ERCOM adopted the hearing officer's findings and ordered disclosure.

The County sought a writ of administrative mandate, urging that nonmembers had a constitutional privacy right that justified nondisclosure.[8] (Code Civ. Proc., § 1094.5.) Although the superior court concluded nonmember County employees had a legally protected privacy right and disclosure of their contact information constituted a "non-trivial" invasion of that right, it also held that SEIU needed the information to fulfill its duty to represent all County employees in collective bargaining. The court then balanced those competing interests. It observed that labor law precedents, while not dispositive, establish a strong public policy in favor of union access to the information. On balance, the public policy favoring collective bargaining outweighed any privacy interest nonmember County employees might have in nondisclosure. Because disclosure did not violate California law, the court denied the County's petition for relief from ERCOM's order.

The County sought review, and the appellate court reframed the issue. It agreed with the trial court that nonmember employees had a reasonable expectation of privacy in their home addresses and phone numbers. However, the court did not balance this expectation of privacy against SEIU's need for the information. Instead, it characterized the question as whether a nonunion employee "has a reasonable expectation under California privacy laws that he or she will be provided notice and an opportunity to object before" contact information is disclosed to the union.

---

[8]     The trial court held the privacy claim had not been exhausted because the County had not relied on it at the administrative hearing. Nevertheless, the court considered the claim on its merits.

5

The court acknowledged the question it framed was one of first impression. It sought guidance by analogizing SEIU's request to a class action discovery request for consumers' personal information. Importing a procedure from class action litigation, the court held nonmember employees were entitled to notice and an opportunity to opt out before their home addresses and telephone numbers could be disclosed to SEIU. (See, e.g., *Pioneer Electronics*, *supra*, 40 Cal.4th at pp. 372-373.) In this analysis, the appellate court assumed the privacy rights of objecting employees would always outweigh SEIU's need for the information and that SEIU only had a right to contact information for those nonmember employees who failed to object. We granted SEIU's petition for review.

## II. DISCUSSION

A.    *Employer's Duty to Provide Information Relevant to Collective Bargaining*

As a threshold matter, apart from privacy concerns, the County contends no applicable law requires that it give SEIU the requested information. We hold to the contrary. Under the MMBA and applicable labor law precedents, the failure to provide relevant information violated the County's obligation to bargain in good faith. Before turning to the good faith question, we explore the interrelation between federal and state labor laws.

   1.    *Overview of Applicable Labor Laws*

The National Labor Relations Act (NLRA) governs collective bargaining in private sector employment. (1 Castagnera et al., Termination of Employment (2002) § 1:131; see *Department of Defense v. FLRA* (1994) 510 U.S. 487, 503 (*Dept. of Defense*); *Teledyne Economic Development v. N.L.R.B.* (4th Cir. 1997) 108 F.3d 56, 59.) However, the NLRA leaves states free to regulate labor relationships with their public employees. (29 U.S.C. § 152(2); *Davenport v. Washington Ed. Assn.* (2007) 551 U.S. 177, 181.)

Public employees in California do not have the right to bargain collectively absent enabling legislation. (*American Federation of State etc. Employees v. County of Los Angeles* (1975) 49 Cal.App.3d 356, 358 (*American Federation*).)

6

Rather than fashion a single overarching employment relations law, like the NLRA, our Legislature has passed several different statutes covering specific categories of public employees. (See *Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1084-86 (*Coachella Valley*).) In 1968, the Legislature enacted the MMBA, authorizing collective bargaining for employees of most local governments, including Los Angeles County. (§ 3500 et seq., added by Stats. 1968, ch. 1390, pp. 2725-2729.) State employees and those of school districts were excluded from the MMBA (*Coachella Valley*, at p. 1083), but separate statutes were later enacted to cover these government workers.[9] "The MMBA imposes on local public entities a duty to meet and confer in good faith with representatives of recognized employee organizations, in order to reach binding agreements governing wages, hours, and working conditions of the agencies' employees. (Gov. Code, § 3505.)" (*Coachella Valley*, at p. 1083.)

The MMBA is administered by PERB, a quasi-judicial administrative agency modeled after the NLRB. (See *Coachella Valley*, *supra*, 35 Cal.4th at pp. 1084-1085; § 3540.) Although the Legislature initially created PERB in 1975 to enforce a different employment relations statute,[10] PERB's jurisdiction has expanded as the Legislature passed new laws addressing specific realms of public

[9] Employment relations between the State of California and certain categories of its employees are governed by the Ralph C. Dills Act. (§ 3512 et seq., added by Stats. 1986, ch. 103, § 1, p. 237.) School district employment relations are covered by the Educational Employment Relations Act. (§ 3540 et seq.)

[10] The Legislature created the Educational Employment Relations Board (EERB) in 1975 to administer the Educational Employment Relations Act (EERA). (*Coachella Valley*, *supra*, 35 Cal.4th at pp. 1084-1085.) In 1977 the Legislature expanded the EERB's jurisdiction to encompass unfair practice charges under the State Employer-Employee Relations Act (§ 3512 et seq. [now the Ralph C. Dills Act]) and renamed the entity PERB. (*Coachella Valley*, at p. 1085.)

employment. (*Coachella Valley*, at p. 1085.) In 2000, the Legislature brought the MMBA within PERB's authority (*Coachella Valley*, at p. 1085; Stats. 2000, ch. 901, § 8, p. 6607 [adding § 3509]), giving PERB exclusive initial jurisdiction over complaints alleging unfair labor practices violating the MMBA. (§ 3509; *City of San Jose v. Operating Engineers Local Union No. 3* (2010) 49 Cal.4th 597, 605.) However, the statute does not apply to Los Angeles County. (§ 3509, subd. (d).)

In the same year the MMBA was enacted, the County passed its own ordinance conforming to the legislative policies expressed in the MMBA. (*American Federation*, *supra*, 49 Cal.App.3d at p. 358.) The ordinance created ERCOM to administer its provisions. (*Ibid.*; *Los Angeles County Employees Assn., Local 660 v. County of Los Angeles* (1973) 33 Cal.App.3d 1, 3.) In giving PERB jurisdiction over MMBA disputes, the Legislature made an express exception for ERCOM. Section 3509, subdivision (d) states that, notwithstanding PERB's jurisdiction to administer the MMBA, ERCOM retains the power to consider and resolve employment relations matters "consistent with and pursuant to the policies of this chapter." Allegations of unfair labor practices by the County must be brought to ERCOM, not PERB. In essence, ERCOM is a separate agency empowered to resolve public employment labor disputes in Los Angeles County just as PERB does for all other counties in California.

ERCOM must exercise its authority in a manner "consistent with and pursuant to" the policies of the MMBA as interpreted and administered by PERB. (§ 3509, subd. (d).) Accordingly, the County's ordinance must be construed to avoid any conflict with the MMBA, and decisions from PERB interpreting the MMBA are highly persuasive when interpreting the County's ordinance. As we discuss, PERB decisions have uniformly given unions the right to obtain employee home contact information. Federal administrative decisions interpreting analogous provisions of the NLRA are also persuasive authority supporting disclosure of the information sought here.

8

2. *Labor Law Precedents Hold Contact Information Presumptively Relevant*

Decisions under the NLRA and corresponding California laws have long held that employers must generally give unions the home addresses and telephone numbers of employees the union represents. These holdings stem from the general principle that an employer's duty to bargain in good faith encompasses an obligation to provide information the union needs in order to represent employees. The United States Supreme Court has observed, "There can be no question of the general obligation of an employer to provide information that is needed by the bargaining representative for the proper performance of its duties." (*NLRB v. Acme Industrial Co.* (1967) 385 U.S. 432, 435-436, citing *Labor Board v. Truitt Mfg. Co.* (1956) 351 U.S. 149.)

Some information is so intrinsic to the core of the employer-employee relationship that it is considered "presumptively relevant." (*Retlaw Broadcasting Co. v. N.L.R.B.* (9th Cir. 1999) 172 F.3d 660, 669; *San Diego Newspaper Guild, Local No. 95 v. NLRB* (9th Cir. 1977) 548 F.2d 863, 867 (*San Diego Newspaper Guild*).) Presumptively relevant information must be disclosed unless the employer proves a lack of relevance or gives adequate reasons why the information cannot be supplied. (*San Diego Newspaper Guild*, at p. 867; *The Kroger Company* (1976) 226 NLRB 512, 513-514.)[11] Moreover, in appropriate cases, a union's ability to obtain relevant information may be tempered by measures to accommodate privacy concerns. "Upon a clear showing of need for confidentiality, courts have found less than complete disclosure justified. [Citations.]" (*Press Democrat*, *supra*, 629 F.2d at pp. 1326-1327; see also *Detroit Edison Co. v. NLRB* (1979) 440 U.S. 301, 317-320.)

---

[11] Conversely, when the information requested is not ordinarily pertinent to collective bargaining, the union has the burden of establishing relevance. (*Press Democrat Pub. Co. v. NLRB* (9th Cir. 1980) 629 F.2d 1320, 1324 (*Press Democrat*); *San Diego Newspaper Guild*, *supra*, 548 F.2d at pp. 867-868.)

A union elected as an exclusive bargaining agent owes a duty of fair representation to *all* employees in the bargaining unit. (See *Jones v. Omnitrans* (2004) 125 Cal.App.4th 273, 283; *Lane v. I.U.O.E. Stationary Engineers* (1989) 212 Cal.App.3d 164, 169; see also *Vaca v. Sipes* (1967) 386 U.S. 171, 177 [same rule under NLRA].) Accordingly, state and federal decisions have consistently held that the employer's obligation to provide relevant information extends to information about employees who are not union members.

a.      *NLRB Decisions*

The NLRB has held that employees' home addresses and phone numbers are presumptively relevant to the union's role as bargaining agent. (*Harco Laboratories* (1984) 271 NLRB 1397, 1398.) An evolving line of cases establishing this point began in 1966, just two years before the MMBA was enacted. In *Excelsior Underwear, Inc.* (1966) 156 NLRB 1236, 1239-1240, the NLRB ruled that private employers must provide unions with the names and addresses of all employees before an election to choose a bargaining representative. The NLRB reasoned that an employer can easily communicate with employees to oppose union representation, but labor organizers generally have limited access to worksites. Thus, without a list of employee names and addresses, labor unions cannot be certain of reaching all employees with arguments supporting representation. (*Id*. at pp. 1240-1241.) Although the union might have other means of communicating with some employees, these alternatives are not always adequate. The NLRB stressed that "the access of *all* employees to such communications can be insured only if all parties have the names and addresses of all the voters. . . . [B]y providing all parties with employees' names and addresses, we maximize the likelihood that all the voters will be exposed to the arguments for, as well as against, union representation." (*Id*. at p. 1241, fn. omitted.) The United States Supreme Court later observed that the disclosure requirement established in *Excelsior Underwear* promotes the goal of fair elections "by encouraging an informed employee electorate and by

10

allowing unions the right of access to employees that management already possesses." (*NLRB v. Wyman-Gordon Co.* (1969) 394 U.S. 759, 767.)

Nearly 30 years ago, this court applied the *Excelsior Underwear* rule in the agricultural context. In *Carian v. Agricultural Labor Relations Bd.* (1984) 36 Cal.3d 654, we upheld a regulation requiring employers to provide a list of employee names, street addresses, and job classifications to a union seeking to organize agricultural employees. We noted that employers had long been required to furnish unions with lists of employee names and addresses under *Excelsior Underwear* and that facilitating communication between employees and union organizers aided the administration of union elections. (*Carian*, at pp. 665-667.)

The *Excelsior Underwear* decision was later extended beyond the election context. In *Prudential Insurance Company of America v. N.L.R.B.* (2d Cir. 1969) 412 F.2d 77, 81 (*Prudential*), the Second Circuit Court of Appeals held that an employer's duty of disclosure "applies with as much force to information needed by the Union for the effective administration of a collective bargaining agreement already in force as to information relevant in the negotiation of a new contract. [Citations.]" As the exclusive bargaining agent for *all* employees, a union has a statutory duty to represent the interests of nonmembers. (*Humphrey v. Moore* (1964) 375 U.S. 335, 342.) The *Prudential* court remarked, "It seems manifest beyond dispute that the Union cannot discharge its obligation unless it is able to communicate with those in whose behalf [it] acts." (*Prudential*, at p. 84.) A union must be able to tell employees about negotiations and obtain their views on bargaining priorities. (*Ibid*.) "Further, in order to administer an existing agreement effectively, a union must be able to apprise the employees of the benefits to which they are entitled under the contract and of its readiness to enforce compliance with the agreement for their protection." (*Ibid*.)

The *Prudential* court observed that other types of information, such as wage data, are considered presumptively relevant. (*Prudential*, *supra*, 412 F.2d at p. 84.) It went on to conclude that employee contact information "has an even

11

more fundamental relevance" to the union's role. (*Ibid*.) The union needs contact information "to bargain intelligently on specific issues of concern to the employees. But data without which a union cannot even communicate with employees whom it represents is, by its very nature, fundamental to the entire expanse of a union's relationship with the employees. In this instance it is urgent so that the exclusive bargaining representative of the employees may perform its broad range of statutory duties in a truly representative fashion and in harmony with the employees' desires and interests. Because this information is therefore so basically related to the proper performance of the union's statutory duties, . . . any special showing of specific relevance would be superfluous." (*Ibid*.)

        b.     *PERB Decisions*

As noted, NLRA cases are persuasive authority for interpreting similar provisions of state law, including the MMBA. (*Fire Fighters Union v. City of Vallejo* (1974) 12 Cal.3d 608, 617; see also *Los Angeles County Civil Service Com. v. Superior Court* (1978) 23 Cal.3d 55, 63-64 [relying on NLRB precedent in construing MMBA provision regarding layoffs].) Based on *Prudential* and similar cases decided under the NLRA, PERB decisions have held that employee contact information is presumptively relevant under California's labor statutes and subject to disclosure upon a representative union's request.

When such a request threatens to violate a constitutionally protected privacy interest, PERB decisions have also followed the NLRB in applying a balancing test. (*Modesto Teachers Assn.* (1985) PERB Dec. No. 479; *Los Rios Classified Employee Assn.* (1988) PERB Dec. No. 670; see *Detroit Edison Co. v. NLRB*, *supra*, 440 U.S. at pp. 317-320 [establishing the federal balancing test].) Once the union has established the relevance and need for certain information, the burden is on the employer to prove that disclosure would compromise the right of privacy. (*Modesto Teachers Assn.*, at p. 10.) If the employer carries this burden, the court balances the conflicting interests of confidentiality and discovery. (*Id*. at pp. 11-13.) However, if the employer fails to show that disclosure would violate a

protected privacy interest, no balancing is necessary and the court will simply order the information disclosed. (*Id*. at p. 12.)

In *Stockton Unified School Dist.* (1980) PERB Dec. No. 143 (*Stockton*), a school district refused to provide information about health insurance benefits paid to union members. Relying on NLRB cases, PERB ruled that a union is entitled to obtain all information necessary and relevant to representing employees in collective bargaining. (*Id*. at p. 22.) Because the health insurance information was presumptively relevant, the district's failure to provide it constituted a refusal to bargain in good faith under the EERA. (§ 3543.5; see *Stockton*, at pp. 18-19.)[12] Two years later, PERB extended *Stockton* to a request for employee addresses. In *Mt. San Antonio Community College Dist.* (1982) PERB Dec. No. 224 (*Mt. San Antonio*), a union sought home addresses of certain instructors who no longer worked for a community college district but were potentially entitled to benefits under a recent decision of this court. (*Id*. at p. 11.)[13] The hearing officer concluded that the requested names and addresses were reasonably related to the union's representational duties. (*Mt. San Antonio,* at p. 11.) PERB agreed and ordered disclosure. (*Id*. at p. 12.)

After *Mt. San Antonio*, PERB decisions have squarely held that the names and addresses of public employees are presumptively relevant and subject to disclosure as part of the duty to bargain in good faith. In *Bakersfield City School Dist.* (1998) PERB Dec. No. 1262 (*Bakersfield*), a union representing school district employees wanted their home addresses and telephone numbers to send *Hudson* notices and communicate with nonmembers about other collective

---

[12] The EERA is one of several public employment statutes administered by PERB. (*Coachella Valley*, *supra*, 35 Cal.4th at p. 1089.) Like the MMBA (§ 3505), the EERA requires public school employers to "meet and negotiate in good faith" with their employees' exclusive bargaining representatives. (§ 3543.5, subd. (c).)

[13] *Peralta Federation of Teachers v. Peralta Community College Dist.* (1979) 24 Cal.3d 369.

bargaining issues. Alternate means of communication were not consistently reliable or confidential. (*Bakersfield*, at p. 15 [hearing officer's proposed order].)[14] Citing *Mt. San Antonio* and NLRB decisions, PERB concluded the employee contact information was presumptively relevant to collective bargaining and the district's failure to provide it violated the EERA, both as a refusal to bargain in good faith (§ 3543.5, subd. (c)) and as an interference with the union's right to represent unit members (§ 3543.5, subd. (b)). (*Bakersfield*, at p. 22; see also *San Bernardino City Unified School Dist.* (1998) PERB Dec. No. 1270 at pp. 75-79.)

These principles also apply to claims arising under the MMBA. In *Golden Empire Transit Dist.* (2004) PERB Dec. No. 1704-M (*Golden Empire*), a bus drivers' union requested employees' home addresses and phone numbers. The transit district refused, citing confidentiality concerns. (*Id.* at p. 2.) Instead, the district sent a consent form to all employees allowing them to agree to disclosure. Contact information would only be released to the union if the employee gave express permission. (*Id.* at pp. 2-3.) PERB concluded the district violated the MMBA (§§ 3503, 3505, 3506) by refusing to give the information "and by unilaterally changing the mechanics of providing such information" to the union. (*Golden Empire*, at p. 9.) Because a union's ability to communicate with those it represents is fundamental to its role in collective bargaining, employee contact information must be disclosed absent a compelling need for privacy. (*Golden Empire*, at p. 8.) The union's need for the information was strong. Its inability to communicate with employees in their homes had "severely hindered" the capacity to fulfill its obligations as their bargaining representative. (*Id.* at p. 7.) For example, the union could not advise employees of new union security requirements, dues increases, and workplace problems. (*Ibid.*) With home

---

**14** PERB adopted the hearing officer's findings of fact and conclusions of law as the decision of the board itself. (*Bakersfield*, *supra*, PERB Dec. No. 1262 at p. 2.)

14

address and telephone information, the union could directly inform employees about union meetings and negotiations and quickly contact employees who were potential witnesses in grievance investigations. (*Ibid*.) The union could not adequately communicate through alternate means, such as bulletin board postings or personal meetings at the jobsite, because the employees were bus drivers who worked different shifts and were frequently on the road. (*Ibid*.) The employer did not show that the need for privacy outweighed these substantial interests.

While recognizing that PERB decisions "are due some deference," the County asserts they are not persuasive because they draw upon precedents decided under the NLRA. As explained, however, federal authorities are relevant and properly examined for guidance in interpreting similar provisions in our state's labor laws. The *Golden Empire* analysis provides persuasive guidance here.

Courts generally defer to PERB's construction of labor law provisions within its jurisdiction. (See *San Mateo City School Dist. v. Public Employment Relations Bd.* (1983) 33 Cal.3d 850, 856 [EERA]; *Paulsen v. Local No. 856 of Internat. Brotherhood of Teamsters* (2011) 193 Cal.App.4th 823, 830 [MMBA].) "PERB is 'one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect.' [Citation.]" (*Banning Teachers Assn. v. Public Employment Relations Bd.* (1988) 44 Cal.3d 799, 804.) We follow PERB's interpretation unless it is clearly erroneous. (*Ibid*.) Here, it is not. PERB's conclusion that the duty of good faith bargaining generally requires disclosure of employee contact information is consistent with the language and purpose of the MMBA, its own decisions interpreting it, and long-standing precedent under the NLRA. Nothing in the language or legislative history of the MMBA persuades us to upset this settled understanding.

### 3. *The MMBA Requires Disclosure of Contact Information*

The County makes several arguments to counter this analysis. None is availing. First, the County relies on two MMBA provisions to argue against disclosure.

Section 3505 requires public employers to "meet and confer in good faith [with union representatives] regarding wages, hours, and other terms and conditions of employment . . . ." The statute states that the duty to meet and confer includes a duty to negotiate "to exchange freely information, opinions, and proposals, and to endeavor to reach agreement on matters within the scope of representation . . . ." (§ 3505.) The County asserts that the phrase "matters within the scope of representation" pertains only to the terms and conditions of employment and that employee addresses and phone numbers are not information that must be freely exchanged.

Initially, the County's position is inconsistent with the language of the statute. The meet and confer duty requires parties "to exchange freely information . . . . *and* to endeavor to reach agreement on matters within the scope of representation . . . ." (§ 3505, italics added.) The phrase "matters within the scope of representation" describes the subjects on which the parties must seek agreement. It does not modify, or limit, the information that must be freely exchanged.

Further, the County's narrow interpretation is not supported by precedent. It has long been held that "[o]ne aspect of the duty to bargain 'collectively in good faith with labor organizations' [citation] requires the employer to make a reasonable and diligent effort to comply with the union's request for relevant information. [Citation.]" (*Cardinal Distributing Co. v. Agricultural Labor Relations Bd.* (1984) 159 Cal.App.3d 758, 762.) Doing so serves the MMBA's underlying policy of fostering informed collective bargaining. Accordingly, appellate courts have held that an employer's failure to provide such information constitutes a refusal to bargain in good faith. (*Cardinal Distributing Co.*, at

16

p. 762.)  The County argues the employee information at issue here is not relevant. Yet NLRB and PERB decisions undermine that assertion.  (See, e.g., *Bakersfield*, *supra*, PERB Dec. No. 1262 at pp. 17-18.)

The County next argues that another MMBA provision, section 3507, does not compel disclosure of employees' home addresses and phone numbers. Section 3507 lists several subjects on which a public employer may adopt rules to govern employment relations.  Among these topics, the statute allows employers to adopt a rule for "[f]urnishing nonconfidential information pertaining to employment relations to employee organizations."  (§ 3507, subd. (a)(8).)  Relying on the statutory construction canon *expressio unius est exclusio alterius*,[15] the County argues that because a rule may be adopted for the furnishing of *nonconfidential* information, the Legislature must have intended to bar the disclosure of confidential information, including home addresses and telephone numbers.  This assertion begs the next question we will address because it assumes the information is confidential.  Moreover, PERB decisions interpreting the MMBA make it clear that section 3507 is not the source of the duty to disclose. Rather, a public employer's disclosure obligation arises from sections 3503, concerning unions' right to represent employees, and 3505, concerning employers' obligation to bargain in good faith.  (See *Golden Empire*, *supra*, PERB Dec. No. 1704-M at p. 19.)

The County further contends the MMBA's legislative history shows that it was not intended to require the disclosure sought here.  However, the County points to nothing in the legislative history that even mentions the issue.  First, the County cites committee reports describing general opposition to codifying collective bargaining rules for public sector employees.  But strong sentiments were also expressed in *favor* of collective bargaining (see, e.g., Assem. Interim

---

**15**     This phrase means "[e]xpression of one thing is the exclusion of another." (Black's Law Dict. (4th rev. ed. 1968) p. 692, col. 1; see *Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 389.)

17

Com. on Industrial Relations, Final Rep. on Assem. Bill No. 607 (1959 Reg. Sess.), and the MMBA was ultimately enacted.[16]

Second, the County claims the legislative history demonstrates resistance to importing NLRA requirements into public sector collective bargaining. Specifically, one committee report observed that an amendment to the MMBA's "meet and confer" requirement was not intended to replicate the same procedure for collective bargaining in the private sector. (Assem. Com. on State Employment, Retirement, and Military Affairs, Summary of Major 1968 Legislation (1967 Reg. Sess.).) Whereas good faith under the NLRA requires "sincere attempts by both sides to reach agreement," the meet and confer provision of the MMBA was intended primarily to formalize and improve communications between the bargaining parties. (Assem. Com. on State Employment, Retirement, and Military Affairs, Summary of Major 1968 Legislation, p. 4.) The County cites this discussion as evidence that the Legislature did not intend to import all collective bargaining practices under the NLRA into the state law governing public employment relations. We need not resolve that question. Even if the County's interpretation is correct, it does not follow that the Legislature intended that California's courts and regulatory bodies ignore settled law under the NLRA when interpreting identical provisions in the MMBA. On the contrary, we have expressly approved of reference to the NLRA and cases interpreting it for guidance in construing our state's labor laws. (*Fire Fighters Union v. City of Vallejo*, *supra*, 12 Cal.3d at p. 617.) Nor does it follow that the Legislature intended to exempt public employers from the obligation to disclose employee contact information when the statutory language and legislative history of the MMBA are completely silent on the point.

---

[16]     At the County's request, we have taken judicial notice of legislative materials for several bills, from 1959 through 1968, that the Legislature considered in enacting the MMBA.

Notably, the Legislature has expressly approved the disclosure of contact information for some public employees. Section 6254.3 creates an exception to the Public Records Act for state, school district, and county office of education employees. Under this statute, employees' home addresses and telephone numbers are generally exempt from public inspection, except that the information may be disclosed to "an employee organization pursuant to regulations and decisions of the [PERB]. . . ." (§ 6254.3, subd. (a)(3).)[17] Accordingly, although the contact information for state employees and certain county and local employees is generally to be kept private from the public at large, the Legislature has specifically authorized its disclosure *to unions* in accordance with PERB precedent.[18]

In a related point, the County asserts its conduct was appropriate under a local ordinance. The ordinance states, in relevant part: "To facilitate negotiations, the county shall provide to certified employee organizations concerned the published data it regularly has available concerning subjects under negotiation . . . ." (L.A. County Code, § 5.04.060, subd. A.) The County contends it had no obligation to disclose addresses and phone numbers because they were not published and do not concern a subject under negotiation. However, the agency charged with enforcing the ordinance concluded otherwise. The ERCOM hearing officer observed that the agency had never *limited* the information to be disclosed to the material described in the ordinance. The ordinance simply

---

**17**     The statute makes an exception to this exception for law enforcement employees, whose home addresses and telephone numbers are not to be disclosed. (§ 6254.3, subd. (a)(3).)

**18**     A regulation implementing this provision requires that the state provide employee unions with the home addresses of all represented employees. (Cal. Code Regs., tit. 8, § 40165.) Amicus curiae California Department of Personnel Administration states that it has provided home addresses to various employee unions in accordance with section 6254.3 since 1984.

19

describes a type of information the County must provide to the union; it does not purport to limit or prohibit additional disclosures.

In any event, even if the County's interpretation of the ordinance were correct, it would have no effect because local rules cannot conflict with the MMBA. "The MMBA deals with a matter of statewide concern, and its standards may not be undercut by contradictory rules or procedures that would frustrate its purposes. [Citations.] Local regulation is permitted only if 'consistent with the purposes of the MMBA.' [Citation.]" (*International Federation of Prof. & Technical Engineers v. City and County of San Francisco* (2000) 79 Cal.App.4th 1300, 1306.) Thus, the ordinance could not absolve the County of its broader duty under the MMBA to provide the information requested by the union.

4. *Conclusion*

Consistent with PERB's long-standing interpretation of the MMBA and similar labor law provisions, SEIU's request for home addresses and phone numbers of the County employees it represented called for presumptively relevant information. The burden was therefore on the County to prove that the contact information was not relevant or to supply adequate reasons why the information could not be supplied. (*San Diego Newspaper Guild*, *supra*, 548 F.2d at p. 867; *see also Modesto Teachers Assn.*, *supra*, PERB Dec. No. 479 at p. 10 [burden is on employer to show that disclosure would violate a right of privacy].) Because the County failed to do so, its refusal to provide the information violated the duty to meet and confer in good faith. (§ 3505; see *Golden Empire*, *supra*, PERB Dec. No. 1704-M at pp. 6-8; *Bakersfield*, *supra*, PERB Dec. No. 1262 at p. 22.)

B.  *Disclosure Does Not Violate the Constitutional Right of Privacy*

The foregoing analysis is based on settled labor law principles. Whether California's constitutional right of privacy requires a different resolution is a novel question.

In 1972, Californians, by initiative, added an explicit right to privacy in the state's Constitution: "All people are by nature free and independent and have

20

inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, *and privacy*." (Cal. Const., art. 1, § 1, italics added.)

In *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1 (*Hill*), this court established a framework for analyzing constitutional invasion of privacy claims. An actionable claim requires three essential elements: (1) the claimant must possess a legally protected privacy interest (*id*. at p. 35); (2) the claimant's expectation of privacy must be objectively reasonable (*id*. at pp. 36-37); and (3) the invasion of privacy complained of must be serious in both its nature and scope (*id*. at p. 37). If the claimant establishes all three required elements, the strength of that privacy interest is balanced against countervailing interests. (*Id.* at pp. 37-38.) In general, the court should not proceed to balancing unless a satisfactory threshold showing is made. A defendant is entitled to prevail if it negates any of the three required elements. (*Id*. at p. 40; see *Pioneer Electronics*, *supra*, 40 Cal.4th at p. 373.) A defendant can also prevail at the balancing stage. An otherwise actionable invasion of privacy may be legally justified if it substantively furthers one or more legitimate competing interests. (*Hill*, at p. 40.) Conversely, the invasion may be unjustified if the claimant can point to "feasible and effective alternatives" with "a lesser impact on privacy interests." (*Ibid*.)

The question in *Hill* was whether California Constitution article I, section 1 supports a cause of action for invasion of privacy. Here, the question is somewhat different. The County claims it is obligated to assert employees' privacy rights and that this obligation relieves it of any duty to honor the union's requests. Nevertheless, *Hill* provides a useful framework for examining how competing interests are managed in the privacy context.

"[I]n applying the *Hill* balancing test, trial courts necessarily have broad discretion to weigh and balance the competing interests. (*Hill*, *supra*, 7 Cal.4th at pp. 37–38.)" (*Pioneer Electronics*, *supra*, 40 Cal.4th at p. 371.) The trial court here found that County employees who are not union members have a substantial

interest in maintaining the privacy of their home addresses and telephone numbers. The court gave this interest additional weight because the employees had exercised their constitutional right *not* to associate with the union. However, on balance, the court concluded SEIU's interest in contacting the employees it represents "significantly outweighs" nonmembers' interest in preventing disclosure of the information. After examining each of the *Hill* factors, we agree with the trial court that disclosure was required.

        1.     *Legally Protected Privacy Interest*

Legally recognized privacy interests include "interests in precluding the dissemination or misuse of sensitive and confidential information," which *Hill* described under the umbrella term " 'informational privacy.' " (*Hill*, *supra*, 7 Cal.4th at p. 35.) The parties agree that County employees have a legally protected privacy interest in their home addresses and telephone numbers. "Courts have frequently recognized that individuals have a substantial interest in the privacy of their home. [Citations.]" (*Planned Parenthood Golden Gate v. Superior Court* (2000) 83 Cal.App.4th 347, 359.) In particular, the "privacy interest in avoiding unwanted communication" is stronger in the context of an individual's home than in a more public setting. (*Hill v. Colorado* (2000) 530 U.S. 703, 716.) Accordingly, home contact information is generally considered private. The next question is whether nonmember employees could reasonably expect that their contact information would be shielded from the union.

        2.     *Reasonable, Although Reduced, Expectation of Privacy*

"A 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms." (*Hill*, *supra*, 7 Cal.4th at p. 37.) The reasonableness of a privacy expectation depends on the surrounding context. We have stressed that "customs, practices, and physical settings surrounding particular activities may create or inhibit reasonable expectations of privacy." (*Id.* at p. 36.)

The practice followed for many years in Los Angeles County contributed to a reasonable expectation of privacy. The County employs approximately 55,000 people. Of this group, 14,500 employees have chosen *not* to join the union. Throughout the decades that SEIU has been the exclusive bargaining representative of these employees, the County has not given their home contact information to the union. Since 1994, the County and SEIU have used ERCOM, or a third party clearinghouse, to mail *Hudson* notices to nonmember employees. It is undisputed that the County has never disclosed the employees' home addresses or telephone numbers to the union. Considering this long-standing and consistent practice, it was reasonable for nonmember employees to expect that the County would continue to keep their home contact information private.

Nonmember employees gave their home addresses and telephone numbers to the County for the limited purpose of securing employment. A job applicant who provides personal information to a prospective employer can reasonably expect that the employer will not divulge the information outside the entity except in very limited circumstances. For example, various laws require employers to disclose information to governmental agencies, such as the Internal Revenue Service and Social Security Administration, and disclosure may also be necessary for banks or insurance companies to provide employee benefits. (See *Belaire-West Landscape, Inc. v. Superior Court* (2007) 149 Cal.App.4th 554, 561 (*Belaire-West*).) But beyond these required disclosures, it is reasonable for employees to expect that their home contact information will remain private "in light of employers' usual confidentiality customs and practices." (*Ibid*.) The County followed its long-standing custom and practice when it refrained from disclosing the home addresses and telephone numbers of nonunion employees.

Moreover, as the trial court observed, employees who exercised their right *not* to associate with the union have a somewhat enhanced privacy expectation. The record reflects that just over half of the approximately 14,500 nonmember employees voluntarily gave home contact information to SEIU when completing

their annual *Hudson* notice forms.  The remaining 7,222 nonmember employees chose not to disclose this information, although in most cases they had numerous opportunities to do so.

Both courts below determined that County employees had a reasonable expectation of privacy in their home addresses and phone numbers.  For the reasons discussed, we agree.  However, we note that the reasonableness of this expectation was somewhat reduced in light of the common practice of other public employers to give unions this information.

Custom and practice can reduce reasonable expectations of privacy in information typically considered even more sensitive than addresses and phone numbers.  In *International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 327 (*IFPTE*), a group of reporters filed a Public Records Act (§ 6250 et seq.) request for the names, job titles, and gross salaries of City of Oakland employees earning over $100,000.  We acknowledged that "many individuals, including public employees, may be uncomfortable with the prospect of others knowing their salary and . . . would share that information only on a selective basis, even within the workplace." (*IFPTE*, at p. 331.)  We also acknowledged that public disclosure of salary information could cause discomfort and embarrassment.  (*Ibid*.)  Nonetheless, we concluded the city's employees lacked a reasonable expectation of privacy in light of the Attorney General's long-standing opinion that government payroll information is public, the widespread practice of state and local governments to disclose this information, and the strong public policy favoring transparency in government.  (*IFPTE*, at pp. 331-332, 338.)

As in *IFPTE*, disclosure of employees' home contact information to their union " 'is overwhelmingly the norm.' " (*IFPTE*, *supra*, 42 Cal.4th at p. 332.)  For nearly 50 years, private employers have been required to disclose contact information to employees' unions.  (See *Prudential*, *supra*, 412 F.2d at p. 84; *Excelsior Underwear, Inc.*, *supra*, 56 NLRB at p. 1241.)  Based on these federal

24

precedents, we remarked almost 30 years ago that requiring employers to furnish lists of employee names and addresses to facilitate communication with a union "is hardly novel in the arena of labor relations." (*Carian v. Agricultural Labor Relations Bd.*, *supra*, 36 Cal.3d at p. 665.) As discussed, PERB has held that the same disclosure rules apply to public employment under various California labor statutes, including the MMBA. (See *Golden Empire*, *supra*, PERB Dec. No. 1704-M, at pp. 6-8; *Bakersfield*, *supra*, PERB Dec. No. 1262, at p. 22.) Thus, when the information is requested, established precedent requires that all private employers and most public employers provide unions with contact information for all employees in the represented bargaining unit. Although we have concluded that, on balance, it was reasonable for County employees to expect that their information would not be disclosed to SEIU because of the long-standing practice in Los Angeles County, the reasonableness of this privacy expectation was reduced in light of the widespread, settled rules requiring disclosure elsewhere. (See *Pioneer Electronics*, *supra*, 40 Cal.4th at p. 372 [customers who had given their contact information to a manufacturer in connection with a product complaint had a "reduced" expectation of privacy].)

   3. *Serious Invasion of Privacy*

  "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." (*Hill*, *supra*, 7 Cal.4th at p. 37.) The disclosure contemplated in this case was more than trivial. It rose to the level of a "serious" invasion of privacy under *Hill*.

  In *Dept. of Defense*, *supra*, 510 U.S. 487, the Supreme Court considered a union request similar to the one SEIU makes here. The court observed: "Perhaps some of these individuals have failed to join the union that represents them due to lack of familiarity with the union or its services. Others may be opposed to their union or to unionism in general on practical or ideological grounds. Whatever the reason that these employees have chosen not to become members of the union or

25

to provide the union with their addresses, however, it is clear that they have some nontrivial privacy interest in nondisclosure, and in avoiding the influx of union-related mail, and, perhaps, union-related telephone calls or visits, that would follow disclosure." (*Id*. at pp. 500-501, fn. & italics omitted.)

In *Pioneer Electronics*, *supra*, 40 Cal.4th at pages 372-373, we found that disclosure of customer contact information to a class action plaintiff would not impose a serious invasion of privacy. There, however, the customers had already disclosed their contact information to the manufacturer when complaining about an allegedly defective product. The question was whether a second disclosure of that information to a class action plaintiff asserting the same complaint would constitute a serious invasion of privacy. (*Ibid*.) In finding it would not, we observed that the rules of civil discovery generally permit plaintiffs to discover contact information for potential class members in order to identify additional parties who might assist in prosecuting the case. (*Id*. at p. 373.) Courts of Appeal have regularly allowed the release of contact information sought in class action discovery. (See, e.g., *Crab Addison, Inc. v. Superior Court* (2008) 169 Cal.App.4th 958, 974; *Lee v. Dynamex, Inc.* (2008) 166 Cal.App.4th 1325, 1336-1338; *Alch v. Superior Court* (2008) 165 Cal.App.4th 1412, 1426-1427; *Puerto v. Superior Court* (2008) 158 Cal.App.4th 1242, 1245; *Belaire-West*, *supra*, 149 Cal.App.4th at p. 562.) Indeed, "it is only under unusual circumstances that the courts restrict discovery of nonparty witnesses' residential contact information." (*Puerto v. Superior Court*, *supra*, 158 Cal.App.4th at p. 1254.) The context here is different. The party seeking the information is a union the employees have chosen not to join and have declined in the past to give their contact information. Under these circumstances, disclosure to the union would create a more significant invasion of privacy than disclosure in the class action context.

Moreover, the release of contact information contemplated in *Pioneer Electronics* would have occurred only after the customers had been given notice of the proposed disclosure and an opportunity to object. (*Pioneer Electronics*, *supra*,

26

40 Cal.4th at pp. 372-373.) These protections mitigated any privacy invasion caused by the disclosure.

4. *Balancing of Interests Favors Disclosure*

Because the County made a sufficient showing on the essential elements of a privacy claim, we next consider whether the invasion of privacy is justified because it would further a substantial countervailing interest. (See *Hill*, *supra*, 7 Cal.4th at p. 40.) "Invasion of a privacy interest is not a violation of the state constitutional right to privacy if the invasion is justified by a competing interest. Legitimate interests derive from the legally authorized and socially beneficial activities of government and private entities. Their relative importance is determined by their proximity to the central functions of a particular public or private enterprise. Conduct alleged to be an invasion of privacy is to be evaluated based on the extent to which it furthers legitimate and important competing interests." (*Id*. at p. 38.) Here, the balance favors disclosure.

SEIU's interest in obtaining residential contact information for all employees it represents is both legitimate and important. As discussed, a union elected as an exclusive bargaining agent owes a duty of fair representation to *all* employees in the bargaining unit it represents, including employees who are not union members. (See *Jones v. Omnitrans*, *supra*, 125 Cal.App.4th at p. 283.)

A union breaches the duty of representation if it fails to inform employees about the status of negotiations (*Kern High Faculty Assn. CTA/NEA* (2006) PERB Dec. No. 1834) or changes in the contractual terms of their employment (*Teamsters Local 896 (Anheuser-Busch)* (1986) 280 NLRB 565, 575). Because the union's duty extends to all employees in the bargaining unit, regardless of union membership, the union must have the means of communicating with all employees on these important topics. In addition, a union must give nonmembers an opportunity to express their views on bargaining matters, even if these employees do not have a vote. (*El Centro Elementary Teachers Assn.* (1982) PERB Dec. No. 232.) Direct communication between unions and all bargaining

27

unit employees is essential to ensure that nonmembers' opinions are heard. Finally, as discussed, every year the union must send *Hudson* notices to all employees explaining how their dues are used. (*Hudson*, *supra*, 475 U.S. 292.) The obligation to send *Hudson* notices falls on the union, not the employer, and a union commits an unfair business practice if it collects an agency fee without providing a proper notice. (*UPTE, CWA Local 9119* (2005) PERB Dec. No. 1784-H; see also *Knight v. Kenai Peninsula Borough School Dist.* (9th Cir. 1997) 131 F.3d 807, 817 [employer has no duty to ensure adequacy of union's *Hudson* notice].)

Giving SEIU this contact information will not coerce employees into joining the union. An employee who chooses not to join a union still enjoys the benefits of union representation. "[T]here is a clear distinction between union membership and majority support for collective bargaining representatives." (*N.L.R.B. v. Wallkill Valley General Hosp.* (3d Cir. 1989) 866 F.2d 632, 637.)

Moreover, as several decisions on this subject have noted, alternative means for unions to communicate with nonmembers are often inadequate. Bulletin board postings may not meaningfully convey lengthy or complex information, and employers often monitor the materials posted. (*Prudential*, *supra*, 412 F.2d at pp. 81-82.) A posting provides only one-way communication and is not an avenue for unions to receive employees' views. (*Id*. at p. 82.) Other alternatives, such as union meetings and worksite visits by union representatives, are inefficient and ineffective means of communicating with large and dispersed groups of employees. (See *Golden Empire*, *supra*, PERB Dec. No. 1704-M, at p. 7.)

In contrast, the privacy intrusion occasioned by disclosure of contact information to the union is reduced. As discussed, County employees' expectation of privacy is undermined by the common practice of disclosure in other settings. For decades, the NLRB has required private employers to furnish unions with employees' home contact information (see, e.g., *Prudential*, *supra*, 412 F.2d at

28

p. 84), and PERB has required most California public employers to make the same disclosure (see, e.g., *Golden Empire*, *supra*, PERB Dec. No. 1704-M, at pp. 6-8). The invasion of nonmember employees' privacy, while sufficiently serious to pass muster under the *Hill* test, is also comparatively mild. Nonmember employees may experience increased contact with the union by mail or other means (see *Dept. of Defense*, *supra*, 510 U.S. at pp. 500-501), but there is no evidence SEIU has ever engaged in any harassment of a nonmember. If harassment is a concern, employers may bargain for, or ERCOM may adopt, procedures that allow nonmembers to opt out and prevent disclosure of their contact information. (Cf. § 6254.3, subd. (b) [allowing certain employees to prevent disclosure of contact information by written request].) Although we have concluded that a balancing of interests generally favors disclosure, this balance might, in some cases, tip in favor of privacy when an individual employee objects and demands that home contact information be withheld.

C.    *Court May Not Impose Procedural Safeguards in a Mandate Proceeding*

A final question raised by the Court of Appeal's decision is the availability of what it termed "procedural safeguards," giving employees the ability to object and prevent disclosure. The court below imposed a notice and opt-out procedure without balancing, or even considering, the union's interests in obtaining the requested information. In creating this procedure, the court expressly ignored labor decisions finding that unions are entitled to contact information and instead likened this case to the discovery of third party information in the class action context. Borrowing from *Pioneer Electronics*, *supra*, 40 Cal.4th 360, and other class action cases, the Court of Appeal held that nonmember employees had to be given notice and an opportunity to object before the County disclosed their contact information to SEIU.

The parties here agree that the Court of Appeal overstepped its authority by ordering them to implement specific notice and opt-out procedures. Code of Civil Procedure section 1094.5, subdivision (f) expressly limits the remedies a court

29

may order when reviewing administrative orders and decisions. The court can deny the writ or grant it and set aside the decision. If it sets aside the decision, the court can order the agency to take further action, but it cannot "limit or control in any way the discretion legally vested in" the agency. (Code Civ. Proc., § 1094.5, subd. (f).) Here, rather than simply setting aside ERCOM's decision, the Court of Appeal directed the trial court to order: (1) that the County and SEIU meet and confer on a proposed notice for the trial court's review and approval; and (2) that the County send the approved notice to all nonmember employees. This disposition exceeded the court's codified authority because it stripped ERCOM of all discretion regarding the manner of disclosure. Further, implementation of the order would have required ERCOM to create new administrative procedures for resolving disputes over notice and opt-out rights.

Although the Court of Appeal exceeded its authority by imposing a notice and opt-out requirement, other avenues for implementing privacy safeguards are available. Employers like the County remain free to bargain for a notice and opt-out procedure in negotiating collective bargaining agreements with employee unions. Public employers can also draft employment contracts that will notify employees their home contact information is subject to disclosure to the union and permit employees to request nondisclosure. Finally, nothing in the relevant statutes or case law appears to prohibit agencies such as PERB or ERCOM from developing notice and opt-out procedures that would allow employees to preserve the confidentiality of their home addresses and telephone numbers.[19]

---

**19** Such procedures have been developed in other public employment settings. For example, employees covered by the California Public Records Act can prevent release of their home addresses and telephone numbers by stating their objection in writing that they do not want this information disclosed to the union. (§ 6254.3, subd. (b); see *Golden Empire*, *supra*, PERB Dec. No. 1704-M, at p. 5; *State Center Community College Dist.* (2001) PERB Dec. No. 1471, at p. 5.)

D.    *Conclusion*

Long-standing case law and public policy support direct communication between unions and the employees they represent.  On balance, we conclude SEIU's interest in communicating with all County employees significantly outweighs nonmembers' interest in preserving the privacy of their contact information.

## III.  DISPOSITION

The Court of Appeal's decision is reversed.  The matter is remanded for entry of judgment denying the County's petition for writ of mandate.

**CORRIGAN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**KENNARD, J.**
**BAXTER, J.**
**WERDEGAR, J.**
**CHIN, J.**
**LIU, J.**

31

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** County of Los Angeles v. Los Angeles County Employee Relations Commission
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 192 Cal.App.4th 1409
**Rehearing Granted**

_____

**Opinion No.** S191944
**Date Filed:** May 30 , 2013
_____

**Court:** Superior
**County:** Los Angeles
**Judge:** James C. Chalfant

_____

**Counsel:**

Gutierrez, Preciado & House, Calvin House, Clifton A. Baker; Manuel A. Valenzuela, Jr., Lucia Gonzalez Peck, Joyce M. Aiello and Rosemarie Belda, Deputy County Counsel, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Weinberg, Roger & Rosenfeld, David A. Rosenfeld, Alan G. Crowley, Vincent A. Harrington, Jacob J. White and Ann-Marie Gallegos for Real Party in Interest and Respondent.

Davis, Cowell & Bowe, Richard G. McCracken and Andrew J. Kahn for Union of American Physicians & Dentists, Unite Here International Union and AFT Local 1931 as Amici Curiae on behalf of Real Party in Interest and Respondent.

Leonard Carder, Margot Rosenberg and Arthur L. Liou for International Federation of Professional and Technical Engineers, Local 21, as Amicus Curiae on behalf of Real Party in Interest and Respondent.

Altshuler Berzon, Scott A. Kronland and Eileen B. Goldsmith for SEIU United Long Term Care Workers, SEIU Local 521, SEIU United Healthcare Workers West and California United Homecare Workers as Amici Curiae on behalf of Real Party in Interest and Respondent.

Rothner, Segall & Greenstone, Glenn Rothner, Jonathan Cohen and Anthony Resnick for American Federation of State, County and Municipal Employees, California Faculty Association, California School Employees Association and California Teachers Association as Amici Curiae on behalf of Real Party in Interest and Respondent.

Joan A. Markoff, Will M. Yamada, Paul M. Starkey and Jennifer M. Garten for the California Department of Personnel Administration as Amicus Curiae on behalf of Real Party in Interest and Respondent.

M. Suzanne Murphy and Wendi L. Ross for California Public Employment Relations Board as Amicus Curiae on behalf of Real Party in Interest and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Calvin House
Gutierrez, Preciado & House
3020 E. Colorado Blvd.
Pasadena, CA  91107
(626) 449-2300

David A. Rosenfeld
Weinberg, Roger & Rosenfeld
1001 Marina Village Parkway, Sutie 200
Alameda, CA  94501
(510) 337-1001

Alan G. Crowley
Davis, Cowell & Bowe
595 Market Street, Suite 1400
San Francisco, CA  94105
(415) 597-7200