Filed 2/1/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ORANGE COUNTY WATER DISTRICT, | |
| Petitioner, | |
| v. | G052725 |
| PUBLIC EMPLOYMENT RELATIONS BOARD, | (PERB Dec. No. 2454-M, Case No. LA-CE-856-M) |
| Respondent; | O P I N I O N |
| ORANGE COUNTY WATER DISTRICT EMPLOYEES ASSOCIATION, | |
| Real Party in Interest. | |

Original proceedings; petition for a writ of extraordinary relief.  Petition denied.  Request for judicial notice denied.

Rutan & Tucker, George W. Shaeffer, Jr., and Joel D. Kuperberg for Petitioner.

J. Felix De La Torre, General Counsel, Wendi L. Ross, Deputy General Counsel, and Daniel M. Trump, Regional Attorney, for Respondent.

Donald L. Drozd for Real Party in Interest.

## INTRODUCTION

The Public Employment Relations Board (the Board or PERB) concluded the Orange County Water District (the District) committed an unfair practice, in violation of Government Code section 3502.5, when it refused to consent to an election petitioned for by the recognized employee organization seeking to implement a so-called modified agency shop. (All further statutory references are to the Government Code unless otherwise specified.) An agency shop is defined in section 3502.5, subdivision (a) as an arrangement that requires an employee, as a condition of continued employment, to either join the recognized employee organization or pay the organization a service fee. The proposed agency shop in this case is referred to as a "modified" agency shop because it would apply only to future employees hired into the bargaining unit and not apply to current employees. The District filed a petition for a writ of extraordinary relief from the Board's decision under section 3509.5, subdivision (a). We granted a writ of review.

We deny the petition for extraordinary relief. For the reasons we explain *post*, we hold that section 3502.5 authorizes the proposed modified agency shop.

## STIPULATED FACTS[1] AND PROCEDURAL HISTORY

The District is a public agency within the meaning of section 3501, subdivision (c), and is therefore subject to the provisions of the Meyers-Milias-Brown Act (MMBA), section 3500 et seq. The Orange County Water District Employees Association and the Orange County Employees Association (collectively referred to as the Association) constitute an employee organization within the meaning of section 3501, subdivision (a). The Association is a recognized employee organization within the meaning of section 3501, subdivision (b), which has been formally acknowledged by the District as an employee organization that represents employees of the District. The

---

[1] "Pursuant to the provisions of PERB Regulation section 32170," the parties stipulated "to the relevant facts in lieu of the taking of evidence and examination of witnesses."

Association does not represent employees who have been designated by the District as management and confidential employees of the District within the meaning of section 3507.5.

Since June 24, 2005, the District and the Association have been parties to a memorandum of understanding (MOU) and successor MOU's, which have set forth various wages, hours, and other terms and conditions of employment for the employees in the bargaining unit covered by the MOU.[2] "At all times herein relevant," the total number of employees in the bargaining unit represented by the Association was 184, of which 126 employees were dues paying members of the Association.

In May 2011, in the course of negotiations for a successor MOU, the Association proposed a "modified" agency shop arrangement which would apply only to new employees of the District, hired on or after a set future date, and not apply to then current employees. The District rejected the Association's proposed modified agency shop arrangement on the ground that section 3502.5 does not authorize the creation of such an arrangement.

In July 2012, the Association requested that the MOU be reopened to implement the proposed modified agency shop arrangement. The District rejected the Association's request on the same ground.

On November 14, 2012, the Association served the District and the State Mediation and Conciliation Service (SMCS) with a petition and request for an agency shop election, which stated, in part, that no management or confidential employees were included in the unit, and the petition had been signed by approximately 98 percent of the members of the unit.

The Association's petition contained the signatures of 125 employees of the District, who belonged to the bargaining unit. The petition stated: "We, the undersigned

_____

[2] The "current term" of the MOU between the District and the Association was July 1, 2013 to June 30, 2015.

3

employees of the Orange County Water District represented by the Orange County Employees Association, hereby request a Modified Agency Shop Agreement and an election to implement an Agency Fee Arrangement pursuant to California Government Code section 3502.5 and other applicable laws or regulations. Pursuant to [the] Modified Agency Shop Agreement and Arrangement, all employees hired on or after March 1, 2013, will be required to join as members the Orange County Employees Association or pay to the Orange County Employees Association a 'service fee' as set forth in Government Code section 3502.5(a), et seq. All employees hired prior to March 1, 2013 are specifically excluded from the Modified Agency Shop Agreement and Arrangement."

On December 4, 2012, the District's director of human resources, Stephanie Dosier, received an e-mail from SMCS mediator Jerry Fecher, in which Fecher confirmed receipt of the Association's request for an agency shop election. Fecher requested that a meeting be scheduled to discuss the logistics for setting up an election; he proposed December 12 and 14, 2012, as possible dates for such a meeting.

On December 7, the District's legal counsel responded to Fecher by requesting a postponement of the meeting "until SMCS verified its ability to conduct a modified agency shop election under Government Code section 3502.5(a)." On December 12, Fecher responded to that communication by stating the MMBA does not authorize SMCS to rule on the legality of a proposed agency fee arrangement and further stating, "if the parties are ready and in agreement to proceed, SMCS is available, if necessary, to check the level of support in the petition and/or to subsequent[ly] conduct an election."

After receiving further direction from the District's governing board, on January 3, 2013, the District's legal counsel informed Fecher that the District would not voluntarily consent to a modified agency shop election "which has the intention of creating an agency shop only for employees hired on or after March 1, 2013, and which exempts all current bargaining unit employees." The District reconfirmed its position

4

that an agency shop arrangement must apply to all employees in the unit and therefore cannot be limited to employees hired after a future date.

On July 3, 2013, the Association timely filed an unfair practice charge based on the District's denial of the Association's petition for a modified agency shop election as a violation of section 3502.5. The Association stated it sought "administrative relief by requiring the District to agree to conduct an election pursuant to the petitions signed by significantly more tha[n] the requisite 30% of the eligible members." The Board issued a complaint.

An unfair practice hearing was conducted before an administrative law judge. The parties had filed a stipulated factual record and opening briefs which resulted in the hearing consisting of oral argument. The administrative law judge observed, "the issue presented in this case may be one of first impression for PERB or is likely one of first impression for PERB." The administrative law judge's proposed decision, issued on February 26, 2015, concluded that the District had violated section 3502.5 because it refused to participate in a properly petitioned-for agency shop election. The administrative law judge's proposed decision further concluded that the District had failed to assert a valid defense.

The District timely filed a statement of exceptions, and the Association timely filed a response. The Board reviewed the hearing record in its entirety and concluded the administrative law judge's proposed decision was adequately supported by the evidentiary record, well reasoned, and consistent with all relevant legal principles. The Board found no merit in the District's exceptions and "adopt[ed] the proposed decision, including its procedural history, statement of jurisdiction, findings of fact, identification of issue, conclusions of law, remedy, proposed order and Notice, as the decision of the Board itself as supplemented by a discussion of the District's exceptions."

On October 22, 2015, the District timely filed a "petition for a writ of extraordinary relief" under section 3509.5, subdivision (b) from the Board's decision.

5

This court granted the District leave to file an amended petition on October 28 (the petition).[3] Following full briefing by the parties, this court issued a writ of review.

## REQUEST FOR JUDICIAL NOTICE

The District has filed a request that we take judicial notice of numerous documents. As pointed out in the petition, the District had previously requested that the administrative law judge and the Board each take judicial notice of the same documents, which are all included in the administrative record before this court. The District's request was granted by both the administrative law judge and the Board. Given that all the documents at issue were judicially noticed below and are in our record, we deny the District's request for judicial notice filed in this court as superfluous and moot.

## DISCUSSION

### I.

### THE MMBA AND PERB

"The National Labor Relations Act (NLRA; 29 U.S.C. § 151 et seq.) governs collective bargaining in private sector employment. [Citations.] However, the NLRA leaves states free to regulate labor relationships with their public employees. [Citations.] [¶] Public employees in California do not have the right to bargain collectively absent enabling legislation. [Citation.] Rather than fashion a single overarching employment relations law, like the NLRA, our Legislature has passed several different statutes covering specific categories of public employees. [Citation.] In 1968, the Legislature enacted the MMBA, authorizing collective bargaining for

---

[3] The petition, like the District's original petition, is unverified. Although rule 8.498(a)(3) of the California Rules of Court requires that a petition to review an order or decision of the Board must be verified, no party raises this issue in this appeal. In any event, the parties have stipulated to the relevant underlying facts. We do not further address the lack of verification.

6

employees of most local governments . . . .  [Citation.] . . . 'The MMBA imposes on local public entities a duty to meet and confer in good faith with representatives of recognized employee organizations, in order to reach binding agreements governing wages, hours, and working conditions of the agencies' employees.  (Gov. Code, § 3505.)'  [Citation.]" (*County of Los Angeles v. Los Angeles County Employee Relations Com.* (2013) 56 Cal.4th 905, 915-916, fn. omitted (*County of Los Angeles*).)

"The MMBA is administered by PERB, a quasi-judicial administrative agency modeled after the NLRB.  [Citations.] . . . In 2000, the Legislature brought the MMBA within PERB's authority [citations], giving PERB exclusive initial jurisdiction over complaints alleging unfair labor practices violating the MMBA.  [Citations.]" (*County of Los Angeles*, *supra*, 56 Cal.4th at p. 916.)

## II.

### JURISDICTION AND STANDARD OF REVIEW

PERB processes charges of unfair practices brought under the MMBA. (§ 3509, subd. (b).)  "Any charging party, respondent, or intervenor aggrieved by a final decision or order of the board in an unfair practice case . . . may petition for a writ of extraordinary relief from that decision or order."  (§ 3509.5, subd. (a).)  The petition must be filed in the Court of Appeal.  (§ 3509.5, subd. (b).)  "The court shall have jurisdiction to . . . make and enter a decree enforcing, modifying, and enforcing as modified, or setting aside in whole or in part the decision or order of the board.  The findings of the board with respect to questions of fact, including ultimate facts, if supported by substantial evidence on the record considered as a whole, shall be conclusive."  (*Ibid.*)

"Courts generally defer to PERB's construction of labor law provisions within its jurisdiction.  [Citations.]  '. . . PERB is "one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess

7

and therefore must respect." [Citation.]' [Citation.] We follow PERB's interpretation unless it is clearly erroneous." (*County of Los Angeles*, *supra*, 56 Cal.4th at p. 922; see *Banning Teachers Assn. v. Public Employment Relations Bd.* (1988) 44 Cal.3d 799, 804 ["'[T]he relationship of a reviewing court to an agency such as PERB, whose primary responsibility is to determine the scope of the statutory duty to bargain and resolve charges of unfair refusal to bargain, is generally one of deference' [citation], and PERB's interpretation will generally be followed unless it is clearly erroneous."].) "'It is, however, "the duty of this court, when . . . a question of law is properly presented, to state the true meaning of the statute . . . even though this requires the overthrow of an earlier erroneous administrative construction."''" (*Cumero v. Public Employment Relations Bd.* (1989) 49 Cal.3d 575, 587.)

## III.

### SECTION 3502.5 PERMITS THE ESTABLISHMENT OF AN AGENCY SHOP, WHETHER BY NEGOTIATION BETWEEN THE PUBLIC AGENCY EMPLOYER AND A RECOGNIZED EMPLOYEE ORGANIZATION, OR BY PETITION SIGNED BY 30 PERCENT OF THE BARGAINING UNIT MEMBERS COMBINED WITH A MAJORITY APPROVAL IN A SECRET BALLOT ELECTION.

"[A] public agency may enter into an 'agency shop agreement' with the organization recognized as the employees' exclusive or majority bargaining agent" (*County of Los Angeles*, *supra*, 56 Cal.4th at p. 912), under section 3502.5, subdivision (a), which provides: "Notwithstanding Section 3502, any other provision of this chapter, or any other law, rule, or regulation, an agency shop agreement may be negotiated between a public agency and a recognized public employee organization that has been recognized as the exclusive or majority bargaining agent pursuant to reasonable rules and regulations, ordinances, and enactments, in accordance with this chapter." Section 3502.5, subdivision (a) defines the term "'agency shop'" as "an arrangement that requires an employee, as a condition of continued employment, either to join the

8

recognized employee organization or to pay the organization a service fee in an amount not to exceed the standard initiation fee, periodic dues, and general assessments of the organization."

California law further provides that if negotiations between a public agency employer and a recognized employee organization to establish an agency shop fail, "public-sector employees in a bargaining unit may decide by majority vote to create an 'agency shop' arrangement under which all the employees are represented by a union selected by the majority.  [Citation.]  While employees in the unit are not required to join the union, they must nevertheless pay the union an annual fee to cover the cost of union services related to collective bargaining."  (*Knox v. Service Employees* (2012) 567 U.S. __, __ [132 S.Ct. 2277, 2284], citing section 3502.5 (*Knox*).)

Section 3502.5, subdivision (b) provides in part:  "In addition to the procedure prescribed in subdivision (a), an agency shop arrangement between the public agency and a recognized employee organization that has been recognized as the exclusive or majority bargaining agent *shall be placed in effect, without a negotiated agreement, upon* (1) a signed petition of 30 percent of the employees in the applicable bargaining unit requesting an agency shop agreement and an election to implement an agency fee arrangement, and (2) the approval of a majority of employees who cast ballots and vote in a secret ballot election in favor of the agency shop agreement.  The petition may be filed only after the recognized employee organization has requested the public agency to negotiate on an agency shop arrangement and, beginning seven working days after the public agency received this request, the two parties have had 30 calendar days to attempt good faith negotiations in an effort to reach agreement."[4]  (Italics added.)

_____

[4] Section 3502.5, subdivision (b) further states:  "An election that may not be held more frequently than once a year shall be conducted by the California State Mediation and Conciliation Service in the event that the public agency and the recognized employee organization cannot agree within 10 days from the filing of the petition to select jointly a neutral person or entity to conduct the election.  In the event of an agency fee

9

IV.

THE STIPULATED FACTS SHOW THE ASSOCIATION SATISFIED THE PROCEDURAL REQUIREMENTS OF SECTION 3502.5, SUBDIVISION (b) TO REQUIRE THAT A SECRET BALLOT ELECTION REGARDING THE ESTABLISHMENT OF AN AGENCY SHOP BE HELD.

The stipulated facts show that in May 2011, the Association proposed the implementation of an agency shop (designed to apply only to new employees hired on or after a certain future date), during negotiations for a successor MOU with the District. The District rejected the Association's proposal. In July 2012, the Association requested that the MOU be reopened to implement the proposed agency shop arrangement. The District rejected that proposal too. In November 2012, the Association served the District and SMCS with a petition and request for an agency shop election.

The stipulated facts therefore show that the Association satisfied section 3502.5, subdivision (b)'s requirements that it wait 30 days after its request of the District to negotiate an agency shop arrangement before the Association filed its petition to establish an agency shop and have an election held to accomplish that goal. The stipulated facts also show the Association presented a petition signed by at least 30 percent of the employees in the applicable bargaining unit requesting an agency shop agreement and an election to implement an agency fee arrangement. The District does not contend otherwise.

Upon satisfaction of the procedural prerequisites of section 3502.5, subdivision (b), unless they are otherwise excused or the parties enter into an agreement about how the election would occur, PERB regulation No. 32999 (codified at California Code of Regulations, title 8, section 32999) required the District to enter into a consent

---

arrangement outside of an agreement that is in effect, the recognized employee organization shall indemnify and hold the public agency harmless against any liability arising from a claim, demand, or other action relating to the public agency's compliance with the agency fee obligation."

10

election agreement to direct the manner in which the agency shop election would be conducted.  That regulation provides:  "(a) The provisions of this Article are applicable whenever SMCS conducts representation and agency shop elections pursuant to the local rules of an MMBA, Trial Court Act or Court Interpreter Act employer.  [¶] (b) SMCS shall conduct such elections only pursuant to a Consent Election Agreement entered into by all parties[5] and SMCS. The term 'Consent Election Agreement' means either an agreement by the parties as to the time, place and manner of an election, or an agreement by the parties that authorizes the election supervisor assigned by SMCS to determine the time, place and manner of the election."  (Cal. Code Regs., tit. 8, § 32999.)

Here, the District indisputably refused to enter into a consent election agreement or otherwise allow an agency shop election to occur.  The District did so on the ground that the proposed agency shop was unauthorized by statute because it applied only to new employees hired on or after a future date and not to the entire bargaining unit.

V.

SECTION 3502.5 PERMITS THE ESTABLISHMENT OF AGENCY SHOPS WITHOUT SPECIFYING WHETHER AGENCY SHOPS MUST APPLY TO ALL CURRENT AND FUTURE EMPLOYEES IN A BARGAINING UNIT.

The District contends it properly withheld consent from the petitioned-for agency shop election because section 3502.5 does not permit an agency shop that applies to anything less than the entire bargaining unit.  The District's appeal rests on the proper interpretation of section 3502.5.

---

[5] "'Parties' means the MMBA, Trial Court Act, or Court Interpreter Act employer, the employee organization which is the exclusive representative of employees in the voting unit, any employee organization eligible to appear on the ballot in a representation election, or any group of employees which has filed a valid petition pursuant to local rules of the employer."  (Cal. Code Regs., tit. 8, § 33001.)

11

In *Martinez v. Combs* (2010) 49 Cal.4th 35, 51, the California Supreme Court stated:  "'[O]ur fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.'  [Citation.]  In this search for what the Legislature meant, '[t]he statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context.  If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs.  On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction.  In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy.'"

The unambiguous language of section 3502.5 does not support the District's position.  The statute does not define the term "agency shop" in terms of bargaining units, but as a condition placed on an individual employee.  Section 3502.5, subdivision (a) states that the term "'agency shop' *means* an arrangement that requires *an employee*, as a condition of continued employment, either to join the recognized employee organization or to pay the organization a service fee in an amount not to exceed the standard initiation fee, periodic dues, and general assessments of the organization."  (Italics added.)  The term "bargaining unit" is not mentioned in that definition and there is nothing in the statute that implies that an agency shop must apply uniformly to a bargaining unit, or not at all.

The agency shop proposed by the Association is referred to as a "modified agency shop" because it consists of an arrangement that requires certain employees, as a condition of continued employment, to join the Association or pay the Association certain fees.  The term "modified agency shop" is not a term found in the code or in the related regulations.  That term appears to have developed in case law and in legislative discussions to distinguish agency shops that apply to all members of a bargaining unit

12

from those that apply to fewer than all such members.  (See 86 Ops.Cal.Atty.Gen. 169, 170 (2003) ["An agency shop provision that excludes employees hired before a specified date is known as a 'modified' agency shop provision."].)

The Association's proposed agency shop, modified to apply only to employees hired in the future, is an arrangement that requires an employee, as a condition of continued employment, to either join the Association or pay the Association a service fee.  It therefore appears to fall squarely within the statutory definition of an agency shop, and thus appears to be authorized by section 3502.5, subdivision (a).

Neither the California Supreme Court nor any appellate court has addressed whether section 3502.5 authorizes an agency shop that applies to anything less than the entire bargaining unit.  In 2003, the California Attorney General, however, concluded that section 3502.5 authorizes an agency shop that applies to fewer than all employees in the bargaining unit.  Applying the rules of statutory construction, the Attorney General stated:  "[W]e first note that a 'modified' agency shop provision comes within the terms of section 3502.5, meeting the definition contained in subdivision (a) of 'an arrangement that requires *an* employee, as a condition of continued employment, either to join the recognized employee organization, or to pay the organization a service fee . . . .'  (Italics added.)  Not *all* employees are required to join the union or pay a service fee under the statute.  For example, employees are to be excluded if they object to union membership based upon religious grounds (§ 3502.5, subd. (c)) or if they are 'management, confidential, or supervisory employees' (§ 3502.5, subd. (e))."  (86 Ops.Cal.Atty.Gen., *supra*, at p. 173.)

The Attorney General explained:  "It is clear from the legislative history of section 3502.5 that the employee election procedures of subdivision (b) were added to the statute to deal with situations where the negotiated MOU procedures specified in subdivision (a) proved to be unsuccessful.  When section 3502.5 was amended in 2000 (Stats. 2000, ch. 901, § 3) to add subdivision (b), the purposes of the proposed legislation

13

were stated in the legislative committee reports as follows: [¶] '1. Some public agency employers unfairly withhold or refuse agreement on agency fee arrangements despite a significant interest demonstrated by employees. [¶] '2. The existing [statutory] provisions are said to provide employers with an unfair veto authority over such arrangements. [¶] '3. This bill provides employees with an alternative process to obtain an agency fee agreement through a fair, democratic process.' (Sen. Rules Com., Office of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 739 (1999-2000 Reg. Sess.) as amended May 13, 1999, p. 3.) [¶] It is only *after* the public agency and the union have failed to reach an agreement that an employee election may be conducted by the Division of Conciliation of the Department of Industrial Relations ('Division').[6] (§ 3502.5, subd. (b).) Accordingly, while the Legislature has indicated its preference for collective bargaining, the employees of a public agency may nonetheless adopt unilaterally an agency shop provision when the bargaining process has proved unsuccessful." (86 Ops.Cal.Atty.Gen., *supra*, at pp. 173-174.)

We acknowledge the Attorney General's opinion is not binding on this court, but it is entitled to considerable weight. (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1087, fn. 17.) "'Reliance on Attorney General opinions is particularly appropriate where, as here, no clear case authority exists, and the factual context of the opinions is closely parallel to that under review.' [Citation.]" (*County of Orange v.*

---

6 "In July 2012, SMCS was administratively transferred from the Department of Industrial Relations to become a division of PERB. The regulations specifically authorizing SMCS to conduct consent elections for MMBA jurisdictions took effect in October 2013. However, SMCS has been conducting elections in the public sector for much of its history. (See Fecher, CPER Pocket Guide to Public Sector Mediation in California (2012).)" (*County of Fresno* (2016) PERB Order No. Ad-433-M, Administrative Determination (Oct. 19, 2015) p. 16, fn. 17, available at <https://www.perb.ca.gov/decisionbank/pdfs/A433M.pdf> [as of Feb. 1, 2017].) Section 3502.5, subdivision (b) was amended in 2012 to substitute "California State Mediation and Conciliation Service" for "Division of Conciliation of the Department of Industrial Relations."

14

*Association of Orange County Deputy Sheriffs* (2011) 192 Cal.App.4th 21, 36.)  As discussed *ante*, there is no case authority on this issue, and the 2003 opinion of the California Attorney General addresses the precise issue presented here regarding whether a modified agency shop is authorized by section 3502.5.  We find the analysis in that opinion persuasive in concluding section 3502.5 authorizes the modified agency shop proposed by the Association in this case.


VI.

NEITHER *CITY OF HAYWARD V. UNITED PUBLIC EMPLOYEES* (1976) 54 CAL.APP.3D 761 NOR *KNOX*, *SUPRA*, 567 U.S. __ [132 S.CT. 2277], SUPPORTS THE DISTRICT'S INTERPRETATION OF SECTION 3502.5.

In its opening brief, the District states:  "The only MMBA case addressing the meaning of an agency shop by a California Appellate Court is *City of Hayward v. United Public Employees, Local 390* (1976) 54 Cal.App.3d 761.  In *City of Hayward*, the Court defines an agency shop to apply to all employees and states in this regard as follows:  'In an agency shop, union membership is not a condition of employment, but all employees, including those who do not choose to join the union, must pay union dues.'"  The District goes on to argue:  "Section 3510(a) requires the Board to interpret and apply the MMBA in a manner consistent with and in accordance with judicial interpretations of the MMBA. . . . [¶] In spite of the clear reference in *City of Hayward* that an agency shop applies to 'all employees,' the Board instead opines:  'That full agency shop applies to 'all' bargaining unit employees does not mean that lesser forms of union or organizational security, like modified agency shop, are unlawful.' . . . Board's conclusion is contrary to the requirements of section 3510(a), to interpret and apply section 3502.5 in a manner consistent with and in accordance with *City of Hayward*, *supra*."

The District's reliance on *City of Hayward v. United Public Employees* (1976) 54 Cal.App.3d 761 (*City of Hayward*) is puzzling given that section 3502.5 was

15

not enacted until 1981—about five years after that court decision. Our research shows that the term "agency shop" did not appear in the California codes until 1981. Obviously, the appellate court's decision in *City of Hayward* did not involve any interpretation of section 3502.5, or any other statute. The appellate court does offer a statement of its understanding of the definition of an agency shop, but does not cite any authority in support of its definition. In the absence of section 3502.5 or any other statute regarding agency shops, the appellate court in *City of Hayward* construed section 3502's language that "[p]ublic employees also shall have the right to refuse to join or participate in the activities of employee organizations" as prohibiting agency shop agreements between MMBA employers and public employee unions. (*City of Hayward*, *supra*, at pp. 764-767; see Zerger et al., Cal. Public Sector Labor Relations (2016) Protected Activity, § 15.12[4], fn. 54.)

The District also argues: "The United States Supreme Court also had the occasion to interpret section 3502.5(a) in the very recent case of *Knox v. Service Employees International Union, Local 1000* (2012) __ U.S. __, 132 S.Ct. 2277 . . . . In *Knox*, the court interprets section 3502.5(a) to apply to all employees . . . [¶] . . . represented by a union." Not true.

In *Knox*, *supra*, 567 U.S. at page __ [132 S.Ct. at page 2284], the sole issue before the United States Supreme Court was "whether the First Amendment allows a public-sector union to require objecting nonmembers to pay a special fee for the purpose of financing the union's political and ideological activities." In the opinion, the court provided the following background: "Under California law, public-sector employees in a bargaining unit may decide by majority vote to create an 'agency shop' arrangement under which all the employees are represented by a union selected by the majority. Cal. Govt. Code Ann. § 3502.5(a) (West 2010). While employees in the unit are not required to join the union, they must nevertheless pay the union an annual fee to cover the cost of

16

union services related to collective bargaining (so-called chargeable expenses)." (*Id.* at p. __ [132 S.Ct. at p. 2284].)

The majority in *Knox* did not interpret section 3502.5. That statute is not again referenced in the majority opinion. The opinion does not provide any details about the nature of the agency shop mentioned in the case. The Supreme Court did not reference modified agency shops. The Supreme Court's above cited quote, stating that public sector employees may decide by a majority vote to impose an agency shop arrangement that applies to all employees, is consistent with our analysis. Quite simply, just because an agreement may cover "all" employees does not mean an agreement cannot cover "some" employees. Section 3502.5 permits the implementation of agency shop arrangements that apply to all current employees as well as future employees. The Supreme Court's language does not support the District's argument that a modified agency shop is not permitted by that statute.

VII.

OUR INTERPRETATION OF SECTION 3502.5 AS AUTHORIZING THE MODIFIED AGENCY SHOP PROPOSED BY THE ASSOCIATION IS NOT CONTRARY TO LEGISLATIVE INTENT.

The District argues that "modified agency shops support free riders which is directly contrary to the primary purpose of agency shops." (Capitalization, boldface, & underscoring omitted.) Applying the rules of statutory interpretation as set forth by the California Supreme Court in *Martinez v. Combs*, *supra*, 49 Cal.4th at page 51, we do not need to review the legislative history of section 3502.5 and potential impact on public policy because, for the reasons discussed *ante*, we conclude the statutory language of section 3502.5 permits the modified agency shop proposed by the Association.

If we were, however, to conclude that "the language allows more than one reasonable construction," consideration of "the legislative history of the measure and maxims of statutory construction" and, "[i]n cases of uncertain meaning," the

17

consequences of a particular interpretation, including its impact on public policy would not change our conclusion. (*Martinez v. Combs*, *supra*, 49 Cal.4th at p. 51.) The District is correct that courts have stated the primary purpose of implementing an agency shop or similar arrangement is to prevent "free riders."

In the seminal case of *Abood v. Detroit Board of Education* (1977) 431 U.S. 209, 221-222 (*Abood*), the United States Supreme Court explained the primary purpose of a union shop as follows: "The designation of a union as exclusive representative carries with it great responsibilities. The tasks of negotiating and administering a collective-bargaining agreement and representing the interests of employees in settling disputes and processing grievances are continuing and difficult ones. They often entail expenditure of much time and money. [Citation.] The services of lawyers, expert negotiators, economists, and a research staff, as well as general administrative personnel, may be required. Moreover, in carrying out these duties, the union is obliged 'fairly and equitably to represent all employees . . . , union and nonunion,' within the relevant unit. [Citation.] A unionshop arrangement has been thought to distribute fairly the cost of these activities among those who benefit, and it counteracts the incentive that employees might otherwise have to become 'free riders'— to refuse to contribute to the union while obtaining benefits of union representation that necessarily accrue to all employees. [Citations.]" (Fn. omitted.)

In *Knox*, *supra*, 567 U.S. at page __ [132 S.Ct. at page 2289], the United States Supreme Court acknowledged: "'The primary purpose' of permitting unions to collect fees from nonmembers, we have said, is 'to prevent nonmembers from free-riding on the union's efforts, sharing the employment benefits obtained by the union's collective bargaining without sharing the costs incurred.'"

The modified agency shop proposed by the Association does not conflict with the primary purpose described *ante*. By implementing such a modified agency shop, the number of so-called "free riders," who are not union members but enjoy the benefit of

18

union representation by belonging to a bargaining unit, is reduced. Although the modified agency shop arrangement does not apply to current employees, it applies to all new employees hired on or after a certain date. Through attrition and new hires, the number of free riders would continue to decrease in number. Although an agency shop arrangement that applied to all current and future members of a bargaining unit would instantly eliminate the free rider element, nothing in section 3502.5 suggests that type of arrangement is the only one permitted.

Although the record contains a significant amount of legislative history relating to section 3502.5, the District does not cite any portion of it, which reflects a specific legislative intent to *limit* agency shops to those that apply to all current and future members of a bargaining unit. If the Legislature wished to define an agency shop to exclude the type proposed by the Association, it could have done so.

VIII.

OUR INTERPRETATION OF SECTION 3502.5 DOES NOT RENDER SUBDIVISION (d) OF SECTION 3502.5 MEANINGLESS.

The District argues, "a modified agency shop applying only to future employees renders virtually meaningless the rescission election provisions of [section 3502.5, ]sub[division] (d)." (Capitalization, boldface, & underscoring omitted.) Subdivision (d) of section 3502.5 provides: "An agency shop provision in a memorandum of understanding that is in effect may be rescinded by a majority vote of all the employees in the unit covered by the memorandum of understanding, provided that: (1) a request for that type of vote is supported by a petition containing the signatures of at least 30 percent of the employees in the unit, (2) the vote is by secret ballot, and (3) the vote may be taken at any time during the term of the memorandum of understanding, but in no event shall there be more than one vote taken during that term. Notwithstanding the above, the public agency and the recognized employee organization may negotiate, and

19

by mutual agreement provide for, an alternative procedure or procedures regarding a vote on an agency shop agreement.  The procedures in this subdivision are also applicable to an agency shop agreement placed in effect pursuant to subdivision (b)."

The District's argument continues:  "An agency shop that has been created by a majority vote of the existing employees that only applies to new employees hired after a certain date, cannot be realistically rescinded by the new employees pursuant to sub[division] (d).  The rescission of the agency shop requires a majority vote of all the employees in the unit.  Thus, the modified agency shop for only new employees effectively disenfranchises newly-hired employees from having the ability to rescind the agency shop arrangement.  Such an arrangement is contrary to the right of public employees to refuse to join or participate in the activities of employee organizations pursuant to section 3502."

Our interpretation of section 3502.5, as authorizing the type of agency shop proposed by the Association, does not preclude an election rescinding the agency shop arrangement under section 3502.5, subdivision (d).  Nor does our interpretation of section 3502.5 render it unrealistic, much less impossible, to secure a majority vote of all the employees in the unit to rescind such an arrangement.  Concluding the proposed agency shop is statutorily authorized does not render subdivision (d) of section 3502.5 meaningless.

IX.

THE AGENCY SHOP ARRANGEMENT HAS WITHSTOOD CONSTITUTIONAL SCRUTINY.

The District argues the Board erroneously concluded "that a modified agency shop raises no First Amendment concerns."  (Boldface, underscoring, & some capitalization omitted.)  The United States Supreme Court has repeatedly expressed concern that the implementation of agency shops in general raises First Amendment

20

issues. However, the United States Supreme Court has not held that an agency shop, in and of itself, is unconstitutional.

In *Abood*, *supra*, 431 U.S. at page 234, the United States Supreme Court held that nonunion public employees have a First Amendment right to prevent a union from spending a part of their compulsory service fees on contributions to political candidates or on "express[ions of ] political views unrelated to [the union's] duties as exclusive bargaining representative." In *Abood*, the United States Supreme Court stated: "To compel employees financially to support their collective-bargaining representative has an impact upon their First Amendment interests. An employee may very well have ideological objections to a wide variety of activities undertaken by the union in its role as exclusive representative. His moral or religious views about the desirability of abortion may not square with the union's policy in negotiating a medical benefits plan. One individual might disagree with a union policy of negotiating limits on the right to strike, believing that to be the road to serfdom for the working class, while another might have economic or political objections to unionism itself. An employee might object to the union's wage policy because it violates guidelines designed to limit inflation, or might object to the union's seeking a clause in the collective-bargaining agreement proscribing racial discrimination. The examples could be multiplied. To be required to help finance the union as a collective-bargaining agent might well be thought, therefore, to interfere in some way with an employee's freedom to associate for the advancement of ideas, or to refrain from doing so, as he sees fit. But the judgment clearly made in [*Railway Employees' Dept. v. *]*Hanson*[ (1956) 351 U.S. 225] and [*Machinists v. *]*Street*[ (1961) 367 U.S. 740] is that such interference as exists is constitutionally justified by the legislative assessment of the important contribution of the union shop to the system of labor relations established by Congress. 'The furtherance of the common cause leaves some leeway for the leadership of the group. As long as they act to promote the cause which justified bringing the group together, the individual cannot withdraw his financial

21

support merely because he disagrees with the group's strategy. If that were allowed, we would be reversing the *Hanson* case, *sub silentio*.'" (*Id.* at pp. 222-223, fn. omitted.)

In *Teachers v. Hudson* (1986) 475 U.S. 292, 302-303, the United States Supreme Court considered the "[p]rocedural safeguards" necessary to implement *Abood*, stating: "First, although the government interest in labor peace is strong enough to support an 'agency shop' notwithstanding its limited infringement on nonunion employees' constitutional rights, the fact that those rights are protected by the First Amendment requires that the procedure be carefully tailored to minimize the infringement. Second, the nonunion employee—the individual whose First Amendment rights are being affected—must have a fair opportunity to identify the impact of the governmental action on his interests and to assert a meritorious First Amendment claim." (Fns. omitted.)

In *Knox*, *supra*, 567 U.S. at page __ [132 S.Ct. at page 2289], the United Supreme Court stated: "When a State establishes an 'agency shop' that exacts compulsory union fees as a condition of public employment, '[t]he dissenting employee is forced to support financially an organization with whose principles and demands he may disagree.' [Citation.] Because a public-sector union takes many positions during collective bargaining that have powerful political and civic consequences . . . , the compulsory fees constitute a form of compelled speech and association that imposes a 'significant impingement on First Amendment rights.' [Citation.] *Our cases to date have tolerated this 'impingement,' and we do not revisit today whether the Court's former cases have given adequate recognition to the critical First Amendment rights at stake*." (Italics added.)

In *Harris v. Quinn* (2014) 573 U.S. __, __ [134 S.Ct. 2618, 2623], the majority refused to extend *Abood* and held that the First Amendment to the United States Constitution does not permit a state to compel personal care providers to subsidize speech on matters of public concern by a union that they do not wish to join or support.

22

Although the United States Supreme Court has expressed great concern over how compulsory union fees in the agency shop context might support ideological causes that would impinge upon an employee's First Amendment rights, the court has not found the fact of an agency shop arrangement, modified or otherwise, in and of itself, unconstitutional. Our case concerns whether the District wrongfully withheld its consent to the holding of an election for a modified agency shop. This case does not and has not raised issues or developed a record regarding how the Association might spend fees collected from nonunion members if a majority voted in favor of the proposed agency shop and whether any such spending decision might trigger the First Amendment concerns addressed *ante*.

DISPOSITION

The petition is denied. The Association is awarded its costs on appeal. (Cal. Rules of Court, rule 8.493(a)(1)(B).)

FYBEL, J.

WE CONCUR:

O'LEARY, P. J.

BEDSWORTH, J.

23