Filed 10/2/24  P. v. Franklin CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BENJAMIN FRANKLIN,<br><br>Defendant and Appellant. | B328912<br><br>(Los Angeles County Super. Ct. No. A453505-02) |

APPEAL from judgment of the Superior Court of Los Angeles County, Joseph R. Porras, Judge.  Affirmed.

James S. Donnelly-Saalfield, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, Thomas C. Hsieh, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

In December 1981, Harold Williams (Williams) was shot to death, his jewelry and car were stolen, and his home was set on fire.  In 1982, a jury convicted appellant Benjamin Franklin (appellant) of first degree murder (Pen. Code, § 187[1]), robbery (§ 211), and grand theft auto (§ 487.3).  In 2020, appellant filed a petition for resentencing under former Penal Code, section 1170.95 (now § 1172.6).[2]  After issuing an order to show cause and conducting an evidentiary hearing, the Superior Court denied the petition, finding respondent the People of the State of California (the People) proved beyond a reasonable doubt that appellant was a major participant in the robbery and acted with reckless indifference to human life.  Appellant challenges the sufficiency of evidence supporting the resentencing court's findings, contends he was denied the effective assistance of counsel, and argues the court's theory of felony murder violated his Sixth Amendment right to a jury trial.  We affirm.

## BACKGROUND

### A.    Information and Trial Evidence

We recite the factual background from the materials considered by the resentencing court during the evidentiary hearing.  Those materials include the reporter's and clerk's

---

[1]    All statutory references in this opinion are to the Penal Code.

[2]    In 2022, former Penal Code section 1170.95 was renumbered 1172.6 without substantive change.  (Stats. 2022, ch. 58, § 10.)  We refer to the current statutory numbering in this opinion.

transcripts from appellant's trial.[3]  On December 7, 1981, Williams's body was found in a pond in his backyard.  Appellant and his brothers, Roy Franklin (Roy) and Kirk Franklin (Kirk) [4], were charged with murder, robbery, arson, and grand theft auto.  The information alleged special circumstances—appellant's personal use of a firearm during the commission of the murder and robbery.

Until his death on December 6, 1981, Williams lived in a home on 80th Street in Los Angeles County.  He had known Roy for about four years.

Certain items of Williams's belongings were described at trial.  For years, Williams had "continuously" worn a distinctive gold and red ring, including on the evening before his death.  He owned a white Volkswagen bug that he parked in his driveway.

Alex Franklin (Alex), the father of appellant and his brothers, testified that he lived in a house on 106th Street.  Appellant kept his clothes there, sometimes slept there, and called it his "home."  Before the murder, Alex owned a .38 caliber

---

[3]     The People requested we take judicial notice of the appellate record from the direct appeal from his conviction (clerk's and reporter's transcripts and our opinion in *People v. Franklin* (Jan. 13, 1984, 2 Crim. 43628) [nonpub. opn.] (*Franklin I*).)  The same documents were on the CD that was marked as Exhibit 1 and received into evidence at the section 1172.6 evidentiary hearing.  Since the documents are already part of the record, we deny the request for judicial notice as superfluous.  (*Orange County Water Dist. v. Public Employment Relations Bd.* (2017) 8 Cal.App.5th 52, 59 [where documents were already in record, request for judicial notice was "superfluous and moot"].)

[4]     Because some of the persons described in this opinion share surnames, we refer to them by their first names.  This is to avoid confusion, and no disrespect is intended.

handgun, but it was stolen in early December. He saw appellant carrying the gun the week before and on the day of the murder.

The night of the murder, Alex saw appellant, Roy, and Kirk depart from his home around 7 p.m. Before 9 p.m., a neighbor saw three young Black men in Williams's yard, and she recognized Roy.

Appellant described what happened inside of Williams's home in a post-arrest interview. Appellant said he entered the home armed with a snub-nosed .38 caliber gun. He said there was a man in the home who wore a black beanie and "kept saying, 'Don't kill me, don't kill me, don't kill me.'"

Williams's home was set on fire. A neighbor heard someone start the Volkswagen and drive away around 11 p.m. Appellant told a sheriff's deputy that he and Kirk stole the car.

On December 7, 1981, sheriff's deputies found Williams's body in a backyard pond, wrapped in a blood-stained rug and a sheet, along with a black beanie and other items. A bag of cans and gardening equipment were piled on the body. Blood spots were found inside the house. The next day, appellant pawned Williams's ring.

During a search of Alex's home on December 9, sheriff's deputies recovered two spent .38 caliber cartridges. The same day, appellant was seen driving a white Volkswagen and in possession of the same handgun that would later be confiscated upon his arrest. Fearing he would be implicated in the murder, appellant drove to Bakersfield. He then decided to return to Los Angeles and was arrested on December 10, 1981, with a loaded .38 caliber gun in his pocket. Deputies confiscated the gun and six live .38 caliber rounds of ammunition.

It was stipulated that Williams died from a gunshot wound to the back of his head. A firearms examiner analyzed the gun taken from appellant, the live rounds, the spent casings, and the bullet retrieved from Williams's body. He opined it was "probable" the gun fired the bullet retrieved from Williams's body.

Defense witnesses attempted to establish an alibi. Appellant, his sister, and a friend testified he was at Alex's home from around 7 p.m. to midnight on the night of the murder. Appellant admitted he pawned Williams's ring but testified he found it at Alex's home days before the murder. He admitted he owned the gun that deputies confiscated.

In 1982, a jury convicted appellant of first degree murder on the basis of the felony murder rule, robbery, and grand theft auto; he was acquitted of the arson charge. The jury found true the special circumstance that he personally used a gun during the commission of the robbery; however, it found not true the allegation he used a gun during the commission of the murder. Appellant appealed from the judgment, and a different panel of the court affirmed. (*Franklin I* (Jan. 13, 1984, 2 Crim. 43628).)

## B. Section 1172.6 Proceeding

In 2020, appellant filed a petition for resentencing under section 1172.6. After finding the petition alleged a prima facie case for relief, the resentencing court issued an order to show cause.[5] An evidentiary hearing was conducted, at which the

---

[5] While the petition was pending, appellant was paroled and released from custody. According to his counsel, appellant faced lifetime probation for the murder conviction and wanted to pursue the

court admitted copies of the reporter's and clerk's transcripts from trial and the records of conviction of two prior robberies involving appellant. The resentencing court denied appellant's petition and found the People proved, beyond a reasonable doubt, that appellant remained guilty under the current version of the felony murder law as a major participant in the robbery who acted with reckless disregard for human life.

## DISCUSSION

Appellant asserts three primary errors on appeal. First, he contends the evidence did not support a finding that he was a major participant in the robbery acting with reckless indifference to human life. Second, he contends he was denied effective assistance of counsel because his attorney failed to object to the admission of records of conviction for two prior robberies. Third, he contends the court's theory of felony murder violated his Sixth Amendment right to a jury trial.

### A.     Governing Law: Section 1172.6

In Senate Bill No. 1437 (2017–2018 Reg. Sess.), "the Legislature significantly narrowed the scope of the felony-murder rule" and "created a path to relief for defendants who had previously been convicted of murder on a felony-murder theory

---

petition. The People did not object, and the resentencing court proceeded on the assumption appellant has lifetime probation that would be "count[ed] as actual custody." No one contends this appeal is moot, and we note that parole and probation have been treated as constructive custody in other contexts. (See, e.g., *People v. Villa* (2009) 45 Cal.4th 1063, 1069 [habeas corpus relief has been expanded "'to persons who are determined to be in constructive custody,'" such as "'one on parole'" or on "'probation'"].)

6

but who could not have been convicted under the new law." (*People v. Strong* (2022) 13 Cal.5th 698, 703 (*Strong*).) Resentencing is available "if the defendant neither killed nor intended to kill and was not 'a major participant in the underlying felony [who] acted with reckless indifference to human life, as described in subdivision (d) of [Penal Code] section 190.2.'" (*Ibid*; § 189, subd. (e); § 1172.6.)

Once a petitioner establishes a prima facie case for relief under section 1172.6 and the Superior Court issues an order to show cause, an evidentiary hearing is conducted. (*Strong, supra*, 13 Cal.5th at pp. 708–709.) The prosecution has the burden of proving "'beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. . . .'" (*People v. Cooper* (2022) 77 Cal.App.5th 393, 411.) The trial court acts as an independent fact finder and may "consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed." (*People v. Cody* (2023) 92 Cal.App.5th 87, 102, 110, original italics omitted; § 1172.6, subd. (d)(3).) The trial court "must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard . . . ." (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.)

Our high court substantially clarified the law governing findings under Penal Code section 190.2, subdivision (d) in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks)* and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). (*People v. Oliver* (2023) 90 Cal.App.5th 466, 478.) "'*Banks* elucidated what it means to be a major

7

participant and, to a lesser extent, what it means to act with reckless indifference to human life, while *Clark* further refined the reckless indifference inquiry.'" (*Ibid*.)

*Banks* considered "under what circumstances an accomplice who lacks the intent to kill may qualify as a major participant." (*Banks*, *supra*, 61 Cal.4th at p. 794.) Our high court identified factors that should be considered in making that determination: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Id*. at p. 803, fn. omitted.) However, whether a defendant acted as a major participant depends on the totality of the circumstances. (*Id*. at p. 802.) Moreover, "[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient. All may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.' [Citation.]" (*Id*. at p. 803.)

"Reckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.' [Citation.]" (*In re Scoggins (*2020) 9 Cal.5th 667, 676–677 (*Scoggins*).) "Examples include 'the person who tortures another not caring whether the victim lives or dies, or the robber

who shoots someone in the course of the robbery, utterly indifferent to the fact that the desire to rob may have the unintended consequence of killing the victim as well as taking the victim's property.' [Citation.]" (*Ibid*.) "Reckless indifference 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.' [Citation.]" (*Id*. at pp. 676–677.)

In *Clark*, our high court listed factors to consider when determining whether reckless indifference existed: "Did the defendant use or know that a gun would be used during the felony?  How many weapons were ultimately used?  Was the defendant physically present at the crime?  Did he or she have the opportunity to restrain the crime or aid the victim?  What was the duration of the interaction between the perpetrators of the felony and the victims?  What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force?  What efforts did the defendant make to minimize the risks of violence during the felony?" (*Scoggins*, *supra*, 9 Cal.5th 667, 677 [summarizing *Clark* factors].)  No single consideration is necessary, nor is any one of them necessarily sufficient.  (*Clark, supra*, 63 Cal.4th at p. 618.)

We review the trial court's denial of a section 1172.6 petition for substantial evidence.  (*People v. Reyes* (2023) 14 Cal.5th 981, 988.)  We review the record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*Ibid*.)  "'We presume, in support of the judgment, the existence of

every fact the trier of fact could reasonably deduce from the evidence, whether direct or circumstantial.' [Citation.]" (*In re Harper* (2022) 76 Cal.App.5th 450, 460.) We do not resolve credibility issues or conflicts in the evidence. (*People v. Schell* (2022) 84 Cal.App.5th 437, 442 (*Schell*).)

## C. Felony Murder Under Current Law
### 1. *Major Participant*

In deciding appellant was a major participant in the robbery, the resentencing court focused primarily on his role in the criminal enterprise, his use and supply of a lethal weapon, his presence at Williams's home, his facilitation of the murder, and his conduct after lethal force was used. The court found appellant went to Williams's home carrying a .38 caliber firearm, which he never loaned out and usually carried in his front pocket. The spent casings that law enforcement retrieved from Alex's home and the bullet that killed Williams were .38 caliber. Appellant had "what appears to be what is the murder weapon both before and after," indicating he supplied the weapon. After the killing, appellant took the victim's vehicle, pawned the victim's ring, and fled with his brother to Bakersfield.

Indeed, appellant admitted he took his gun into Williams's home, and the jury found true the allegation that appellant personally used a gun during the commission of the robbery. Thus, substantial evidence identified by the court and found in the record support the finding that appellant was a major participant in the robbery.

Appellant argues that some *Banks* factors weigh against finding that a defendant was a major participant: (1) there was no evidence appellant engaged in planning the robbery; (2) too

10

much emphasis was placed on the jury's finding he personally used a firearm during the robbery; (3) there was no evidence that appellant was aware of prior violent crimes committed by his brothers; (4) there was no evidence appellant was in a position to either facilitate or prevent the killing; and (5) appellant's conduct after the killing did not support an inference he was a major participant in the robbery.

Appellant fails to recognize that not all *Banks* factors must weigh in favor of a major participant finding. (*Banks*, *supra*, 61 Cal.4th at p. 803.) Appellant is essentially requesting that we reweigh the evidence in his favor and draw inferences adverse to the resentencing court's ruling. This violates the principles of substantial evidence review, and we decline to do so. (See *People v. Jones* (2022) 86 Cal.App.5th 1076, 1090 [rejecting appellant's argument that "undue emphasis" was placed on his presence at crime scene and actions after the shooting; "Under a substantial evidence review . . . we do not reweigh the evidence"].)

We note that appellant is incorrect in contending there was no evidence of his involvement in planning the crimes. Although unmentioned by the resentencing court, appellant's trial testimony shows he knew his brothers were targeting Williams. Appellant testified that before the crime occurred, Roy told him that he was going to seek "vengeance" because there had been an incident between Williams and Kirk four weeks earlier. "Vengeance" was a revealing choice of words, as it suggests severe retribution. (See *People v. Belton* (1980) 105 Cal.App.3d 376, 381 [specific intent to murder was not shown absent "threats of personal injury, *vows of vengeance*, conversations about contemplated personal violence, or earlier attempts at murder," italics added.] Appellant, after learning his brothers' plan, joined

11

them, adding his physical presence and a lethal weapon to their mission. This conduct also supported a finding that appellant was a major participant in the robbery that led to Williams's death.

### 2. *Reckless Indifference to Human Life*

The "major participant" and "reckless indifference to human life" "'significantly overlap . . . , for the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life.' [Citation.]" (*Clark, supra,* 63 Cal.4th at pp. 614–615.) The reckless indifference factors include the defendant's use or knowledge a gun would be used during the felony and defendant's physical presence at the crime. (See *Scoggins,* 9 Cal.5th at p. 677.) They also include whether the defendant had an "opportunity to restrain the crime or aid the victim," the "duration of the interaction between" the defendant and the victim, and what efforts the defendant made to minimize the risk of violence during the crime. (*Ibid.*)

In deciding appellant acted with reckless indifference, the resentencing court relied on the evidence supporting the major participant findings. In addition, the court pointed to appellant's bringing a gun to Williams's home, his "going in with two others[, s]o basically making it a three on one," the absence of evidence of any effort to minimize the violence, his participation in disposing of Williams's body ("That doesn't seem to be a one-person job"), and evidence the house was "lit on fire at some point."

The record also contains other evidence indicating appellant acted with reckless indifference. He knew in advance

12

his brothers intended to seek vengeance against Williams, and he fortified the enterprise with a firearm. Once the brothers went to Williams's home, they stayed for at least two hours. During that time, appellant heard the man wearing the black beanie repeatedly plead, "don't kill me," but he did not remove himself or his gun from the scene. Rather than rendering assistance or calling for aid, he acquired the ring Williams was wearing the night before his death. (*People v. Mitchell* (2022) 81 Cal.App.5th 575, 594 (*Mitchell*) ["While the victim lay bleeding, Mitchell's only manifested concern was to rob the man. [¶] That was cold"].) Like the *Mitchell* defendant, appellant's "action and inaction showed indifference." (*Ibid*.) Thus, the record provides substantial evidence to support the resentencing court's finding that reckless indifference was proved beyond a reasonable doubt.

In summary, the trial court did not err in finding appellant was a major participant in the robbery who acted with reckless indifference to human life. Because we affirm the order denying appellant's section 1172.6 petition based on felony murder, we need not reach the People's alternative position that substantial evidence established appellant's guilt as an aider and abettor of express malice murder.

## D.    Ineffective Assistance of Counsel

As part of its evidentiary showing below, the People offered records of appellant's convictions for two prior robberies in which he used a gun. The records, the People argued, showed appellant was "aware of the dangerousness" of the robbery because "he has caused the danger in the past." (See *Banks, supra*, 61 Cal.4th at p. 794 [major participant factors include defendant's awareness of particular dangers posed by the nature of the crime and weapons

13

used].) The records were admitted without objection by defense counsel. Appellant now contends his counsel was ineffective for failing to object.

It is presently unclear whether the statutory right to counsel under section 1172.6 includes the right of a petitioner to raise an ineffective assistance claim on appeal. (See *People v. Delgadillo* (2022) 14 Cal.5th 216, 222 [appeal of denial of petition for postconviction relief under former section 1170.95 "[did] not implicate a constitutional right to counsel"].) We need not decide this issue, however, as we find defendant's claim to be meritless.

A defendant claiming ineffective counsel must demonstrate counsel's inadequacy. "'To satisfy this burden, the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance.' [Citation.]" (*People v. Bona* (2017) 15 Cal.App.5th 511, 517; *Strickland v. Washington* (1984) 466 U.S. 668, 687, 694 (*Strickland*).) "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." (*Strickland, supra,* 466 U.S. at p. 697.)

We need not decide whether the records of conviction were inadmissible and warranted an objection by appellant's counsel. Appellant has not overcome the presumption that his counsel

14

acted within the wide range of reasonable professional assistance, and he has not demonstrated prejudice.

First, the arguments made by appellant's counsel show his tactical reason for electing to argue the effect of the prior robberies instead of objecting to the evidence's admissibility. Defense counsel drew a distinction between the prior robberies and the robbery of Williams: "[T]he one thing the court should note out of those two robberies is basically this. There was never a homicide. No one died. The gun wasn't discharged in any of those instances." In essence, counsel urged that the records showed that appellant lacked awareness that an armed robbery would result in murder because his prior armed robberies were nonfatal. While reasonable minds might differ on the wisdom of this strategy and its obvious risks, we cannot say it was irrational for counsel to allow the records to be admitted and then ask the court to draw an inference favorable to his client. Thus, appellant has not shown his counsel fell below an objective standard of reasonableness.

Second, appellant has not established prejudice. He concedes the resentencing court did not mention the prior robberies in making its major participant and reckless indifference findings, as we have explained, substantial evidence supported these findings. It is not reasonably probable that exclusion of the records of conviction would have yielded a more favorable result. Hence, we decline to find appellant was deprived of effective assistance of counsel.

### E. Deprivation of Right to a Jury Trial

Finally, appellant contends that, by finding him guilty of felony murder under section 189, subdivision (e)(3), the

resentencing court deprived him of his Sixth Amendment right to a jury trial. We disagree.

The Courts of Appeal have "unanimously held that section 1172.6 is an act of lenity in which the petitioner has no Sixth Amendment right to a jury trial." (*Schell, supra,* 84 Cal.App.5th at p. 444; *Mitchell, supra,* 81 Cal.App.5th at p. 589; *People v. Farfan* (2021) 71 Cal.App.5th 942, 948.)[6] Because the relief is an act of lenity, "the Legislature was free to condition the availability of such relief on the convicted person prevailing at an evidentiary hearing conducted pursuant to the nonjury procedure set forth in section 1170.95 [now 1172.6]." (*People v. James* (2021) 63 Cal.App.5th 604, 610–611.) "[T]he procedure is designed solely to permit the reduction of a defendant's punishment; no increase is possible over the sentence that has already become final. If it were necessary to conduct another jury trial—often, as in this case, years after the conduct in question—it is unlikely that the Legislature would have enacted the procedure in the first place. Indeed, a contrary ruling might well prompt the repeal of [former] section 1170.95." (*Id.* at p. 611.) We find *James* and the other decisions that have found no right to a jury trial in section 1172.6 proceedings persuasive and conclude appellant had no constitutional right to a jury trial.

---

[6] The cases cited by appellant are in accord. (*People v. Quan* (2023) 96 Cal.App.5th 524, 534 ["the Sixth Amendment right to a jury trial is not triggered"]; *People v. Basler* (2022) 80 Cal.App.5th 46, 61–62 [petitioner under former § 1170.95 was "not a defendant charged anew with murder and constitutionally entitled to a jury trial"].)

## DISPOSITION

The order denying appellant's section 1172.6 petition is affirmed.

MORI, J.

We concur:

CURREY, P. J.

ZUKIN, J.